686 F.2d 208
 29 Fair Empl.Prac.Cas. 1178,
29 Empl. Prac. Dec. P 32,958,
3 Employee Benefits Ca 1954
Lavinia M. CROSLAND, Appellee,
v.
CHARLOTTE EYE, EAR AND THROAT HOSPITAL, a North Carolina
General Partnership; Nahum R. Pillsbury, Jr., as
Administrator of Charlotte Eye, Ear and Throat Hospital and
as Plan Administrator in the Employees' Pension Plan and
Trust of Charlotte Eye, Ear and Throat Hospital; North
Carolina National Bank as Trustee for the Employees' Pension
Plan and Trust of Charlotte Eye, Ear and Throat Hospital,
Appellants.
Lavinia M. CROSLAND, Appellant,
v.
CHARLOTTE EYE, EAR AND THROAT HOSPITAL, a North Carolina
General Partnership; Nahum R. Pillsbury, Jr., as
Administrator of Charlotte Eye, Ear and Throat Hospital and
as Plan Administrator in the Employees' Pension Plan and
Trust of Charlotte Eye, Ear and Throat Hospital; North
Carolina National Bank as Trustee for the Employees' Pension
Plan and Trust of Charlotte Eye, Ear and Throat Hospital, Appellees.
 Nos. 81-1292, 81-1293.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 2, 1981.
Decided Aug. 12, 1982.
 
 James O. Cobb, Charlotte, N. C. (Ruff, Bond, Cobb, Wade & McNair, Charlotte, N. C., on brief), for appellant/cross appellee.
 H. Morrison Johnston, Charlotte, N. C. (F. Thomas Miller, Jr., Miller, Johnston, Taylor & Allison, Charlotte, N. C., on brief), for appellee/cross appellant.
 Before HALL, PHILLIPS and CHAPMAN, Circuit Judges.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 Lavinia Crosland (claimant) appeals from a district court order granting summary judgment in her favor but denying her prayer for liquidated damages on a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (ADEA). Her contention on appeal is that the district court, after concluding that her former employer unlawfully excluded her from participation in its employee pension plan, erred in failing to find the violation a willful one entitling her to an award of liquidated damages. By cross appeal the employer challenges the district court's finding of violation. We find error on both appeals and reverse and remand for further proceedings.
 
 
 2
 * The defendant-employer, Charlotte Eye, Ear and Throat Hospital (Hospital), is a partnership that provides medical services in the fields suggested by its name. Prior to 1968 the Hospital maintained no pension plan for its employees. In the summer of that year, however, the Hospital asked Earl Arthurs, an experienced consultant in the field of employee benefit plan design, to assist in the adoption of such a plan.
 
 
 3
 Arthurs prepared a "defined benefit" or "fixed use" plan under which employees would receive a defined entitlement based on their salary and years with the Hospital. According to Arthurs' affidavit, he incorporated eligibility requirements typically adopted in such plans at that time. As specifically relevant here, current employees age fifty-six and older and new employees hired after age 53 were not eligible to participate.[1] The plan also required, as a condition of entitlement, participation in the plan by eligible employees for 10 continuous years, with participation entailing contribution of a small percentage of the employee's salary.
 
 
 4
 According to Arthurs' affidavit, the age-based exclusion was necessary because
 
 
 5
 benefits to be funded by the use of insurance would have a prohibitive cost as to employees over age 55 and ... would create an extra tax cost because the expense of funding past service benefits is deductible only at the rate of 10% per year, and the funding of benefits for any employee whose participation begins less than 10 years before retirement would further boost the cost of benefits.
 
 
 6
 Cost factors were discussed with the Hospital and, according to Arthurs' affidavit, "it was concluded that the cost of covering the overage employees would be so great that the Plan would not have been adopted if coverage for them had been required." Arthurs' proposed plan was adopted on September 12, 1968.
 
 
 7
 Arthurs contemporaneously designed and the Hospital adopted a "substitute plan" for employees then older than 55 with at least 13 years of continuous service with the Hospital. This plan apparently provided a smaller relative benefit entitlement than the principal plan. Employees eligible for this secondary plan were notified in writing by the Hospital that they were excluded from the principal plan because they were more than 55 years of age and that the substitute plan had been adopted for their benefit.
 
 
 8
 Claimant was one employee so notified. At the time she was 58 and had worked at the Hospital for 27 years. Her normal retirement date was February 1, 1975, but by arrangement with the Hospital she did not actually retire until February 1, 1980, when she became 70.
 
 
 9
 In September of 1976 Arthurs revised the Hospital's principal plan to comply with the requirements of the recently enacted Employees Retirement Income Security Act, 29 U.S.C. §§ 1001-1381 (ERISA). ERISA specifically addressed the question of plan exclusions, requiring plans such as the Hospital's, inter alia, to allow participation by any employee hired more than five years before normal retirement date. Id. § 1052(a). For this reason, claimant was permitted to join when the plan was amended on October 1, 1976. The same month, according to Arthurs' affidavit, "the substitute plan was dropped as no longer ... necessary."
 
 
 10
 In the Septembers of 1977, 1978, and 1979, claimant received computerized certificates setting forth her future monthly retirement income under the plan as $238.56,.$262.08, and $317.94, respectively. On November 10, 1979, a representative of the Hospital spoke with her concerning her upcoming retirement on January 6, 1980. At this time the representative also provided claimant with documents establishing her total pension entitlement, from which different options could result, as $8,043.16. This entitlement would provide a monthly retirement benefit of $70.87. According to her complaint, claimant then realized for the first time that her retirement benefits would be based solely upon her participation in the amended principal plan beginning September 30, 1976, and would include nothing under either the original plan prior to her inclusion or under the substitute plan.
 
 
 11
 Claimant filed her claim under the ADEA on July 22, 1980, several months after her actual retirement. Both she and the Hospital subsequently moved for summary judgment. In a brief order stating only that there existed no genuine issue as to any material fact and that claimant was entitled to judgment as a matter of law, the district court entered judgment in her favor. The judgment awarded $18,417.91 plus interest, an amount calculated by claimant and conceded by the Hospital to reflect accurately the total to which claimant would have been entitled had she participated in the principal plan from its inception until her normal retirement date in February 1975. The court refused to award liquidated damages. Both parties appealed. We consider first the Hospital's appeal from the grant of summary judgment in favor of claimant.
 
 II
 
 12
 * The ADEA, enacted three months before the Hospital's plan was adopted, makes it unlawful for an employer
 
 
 13
 (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
 
 
 14
 (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.
 
 
 15
 29 U.S.C. § 623(a). Before its amendment in 1978, the ADEA applied to individuals at least forty but less than sixty-five years of age. 29 U.S.C. § 631.
 
 
 16
 The Hospital has not disputed that claimant's exclusion from the original plan-the action apparently found violative by the district court-falls within the prohibitions of these sections, but asserted two statutory defenses. The first is 29 U.S.C. § 626(a)(1), the applicable statute of limitations. The second is 29 U.S.C. § 623(f)(2) (hereafter (f)(2) or the (f)(2) exception), which permits an employer "to observe the terms of ... any bona fide employee benefit plan ... which is not a subterfuge to avoid the purposes of (the Act) ...."[2]
 
 
 17
 As noted, the district court's order provides no detailed reasons for finding these defenses unavailing and summary judgment appropriate. In consequence, though claimant offers several alternative reasons why each of the Hospital's defenses was factually and legally unavailing, it is not clear which of these, if any, was relied upon by the district court. Indeed, even more fundamentally, it is not altogether clear what specific action of the defendant the district court concluded was violative of the Act-a point brought home by claimant's concession on oral argument that "it is difficult to say (which acts of the Hospital) I'm challenging (as unlawful)." It is therefore necessary to make some assumptions as we review the propriety of granting summary judgment. We take the statute of limitations and subsection (f)(2) defenses in that order.
 
 B
 
 18
 Because claimant's complaint alleged the Hospital's unlawful act to have been the "failure to include her in its original plan from its inception," and because the very specific award made fits that allegation, we assume initially that it was this failure to include her from the plan's inception until ERISA forced inclusion that was found specifically violative of the Act. Accordingly, it is with respect to that violation that we assess the district court's implicit rejection of the defendant's statute of limitations defense. We agree that it was properly rejected.
 
 
 19
 29 U.S.C. § 226(e)(1), in conjunction with 29 U.S.C. § 255(a), requires that an action under the ADEA be commenced within two years (or three years if the employer's violation is willful) after a cause of action accrues. Here claimant alleged that the Hospital unlawfully failed to allow her to participate in the original plan from its inception or to provide a substitute plan of benefits at comparable cost. Plainly, from 1968 until claimant's actual retirement in 1980 the Hospital had it in its sole power to, and repeatedly did, alter both the type of plan and the amount of benefits to which claimant was said by it to be entitled. Against this background of constant change by unilateral action, essential fairness compels the holding that the Hospital did not finally decide claimant's status and benefit entitlement until her actual retirement. We hold that it was only at that time that her claim accrued. Since she filed her suit promptly thereafter we agree with the court below that her claim was not time-barred. See Alford v. City of Lubbock, 484 F.Supp. 1001, 1004 (N.D.Tex.1979), aff'd in part and rev'd in part on other grounds, 664 F.2d 1263 (5th Cir. 1982).
 
 C
 
 20
 The district court's exact basis for finding the "bona fide/not subterfuge" defense foreclosed on the summary judgment record is not apparent. We cannot tell whether the court thought the (f)(2) exception not applicable as a matter of law to any age-based exclusion or whether it thought it not available here on undisputed facts of record. The parties have simply joined issue on this appeal on the question whether, as a matter of law on the summary judgment record, the benefit plan with its age-based exclusion was, in the language of the (f)(2) exception, "a subterfuge to avoid the purposes of (the Act)." The issue so framed of course subsumes both alternatives and we address it on that basis.[3]
 
 
 21
 The defendant properly concedes that the ultimate burden of proof to establish this defense is upon it. But it contends that Arthurs' affidavit showing the economic justification for the age-based exclusion sufficed at least to withstand claimant's summary judgment motion.[4] Claimant contends to the contrary that economic justification is irrelevant to the issue because any age-based exclusion in a benefit plan adopted after the effective date of the ADEA constitutes, as a matter of law, a subterfuge to avoid the Act's purposes. On this basis, says claimant, the defense was rightly rejected on the summary judgment record since this plan was adopted after the ADEA's enactment.
 
 
 22
 We agree in general with the defendant's position that it may, by proper proof of economic justification, invoke the protection of the (f)(2) exception; that exclusion of claimant from the original plan was not per se a subterfuge making that protection unavailable. We further agree that on the summary judgment record the question whether claimant's exclusion from the plan was a disqualifying subterfuge under the (f)(2) exception presented a genuine issue of fact that could not be resolved by summary judgment. Reaching that conclusion requires resolving several problems of statutory interpretation centered on the "bona fide/not subterfuge" exception provided by subsection (f)(2).
 
 
 23
 The first has to do with the meaning in context of the key term "subterfuge," and the closely related question of how the absence of subterfuge may be proved by an employer seeking the protection of this statutory exception to otherwise "unlawful" conduct. See 29 U.S.C. § 623(a) (1). The answers are not self-evident in the Act but we think they are compelled by the Supreme Court's decision in United Air Lines, Inc. v. McMann, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), and by the legislative history of the (f)(2) exception.
 
 
 24
 In McMann the Supreme Court held that a bona fide employee benefit plan that was set up long before the ADEA's enactment could not, as a matter of plain meaning statutory interpretation, be a "subterfuge to evade the purposes" of an Act not then in existence; that, accordingly, by virtue of the (f)(2) exception an age-based retirement forced under the plan did not violate the Act. In so holding, the McMann Court rejected and reversed this court's contrary holding that post-Act maintenance of such an existing plan might be violative unless the employer proved absence of subterfuge by proving a "business or economic purpose" justifying the involuntary retirement feature of the plan.
 
 
 25
 In the process the Court interpreted "subterfuge" as used in the statute according to its ordinary meaning: "a scheme, plan, stratagem or artifice of evasion," id. at 203, 98 S.Ct. at 450. And the majority opinion seemed plainly to imply acceptance of-certainly did not reject-this court's premise that were it necessary to prove by means other than a plan's pre-existence that it was not a "subterfuge," this could be done by proving a "business or economic purpose" for its specifically challenged terms. See id. (majority opinion); cf. id. at 207, 98 S.Ct. at 452 (White, J., concurring: so construing majority opinion).
 
 
 26
 Since McMann was decided, its central holding that involuntary retirement provisions in bona fide employee benefit plans (at least those established before the Act) were absolutely excepted from the Act's prohibitions has been overturned by the 1978 amendments to the Act. These flatly removed involuntary retirement provisions from the protection of the employee benefit plan exception. See 29 U.S.C. § 623(f)(2) (1982). Still undisturbed, however, is the McMann Court's interpretation of the meaning of "subterfuge" and its implied acceptance of the means by which an employer may invoke the protection of the (f)(2) exception with respect to benefit plan provisions still within its compass. As indicated, we read McMann to recognize that this can be done by proving that a "business or economic purpose" rather than any intention to evade the ADEA's purposes justified and motivated the inclusion in a plan of such a challenged term.
 
 
 27
 The remaining question is whether the age-based exclusion of employees-such as claimant here-from the participation in bona fide benefit plans fell within the conditional protection of the (f)(2) exception. With exceptions not pertinent here, such an exclusion-without regard to motivation-is now flatly proscribed by ERISA. 29 U.S.C. § 1052(a)(2). But this does not answer the question whether, before ERISA's enactment, it also lay outside the scope of the "bona fide/not subterfuge" exception provided for employee benefit plans under the ADEA.
 
 
 28
 On this appeal claimant appears to argue alternatively that age-based exclusions from participation are simply not within the intended scope of the (f)(2) exception or-what comes to the same thing in practical effect-that, if within its intended scope, any appearing in a post-Act plan is per se a subterfuge so that the protection is unavailable. Because we think the second alternative patently unsupportable in logic,[5] we address here only the first. On it we are persuaded that before ERISA occupied this specific ground and when only the ADEA provided federal statutory protection against age discrimination in employment-the critical period here in issue-the conditional protection afforded employers by subsection (f)(2) was intended to apply to such exclusionary provisions.
 
 
 29
 The plain language of relevant provisions of the ADEA supports this interpretation. Were it not for the (f)(2) exception, the exclusion of an employee from participation in a benefit plan because of age would plainly violate the basic prohibition of 29 U.S.C. § 623(a)(1) that makes it "unlawful ... to ... discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." Subsection (f)(2) then specifically excepts as "not unlawful" acts otherwise prohibited that involve the "obser(vance)" by an employer of "the terms of ... any bona fide employee benefit plan ... which is not a subterfuge ...." Age-based exclusions from participation in such plans are not specifically exempted from the conditional protection afforded by this exception, as are both the "failure to hire" and, by virtue of the 1978 amendments partially overruling McMann, "the involuntary retirement" of employees before age 70.
 
 
 30
 If the plain meaning we ascribe to these provisions be not that plain, we believe our interpretation is also supported by relevant legislative history. Congress' failure specifically to provide in the ADEA what it later did in ERISA (and might have done in the ADEA simply by expressly exempting from (f) (2)'s protection age-based exclusions from benefit plans) appears from that history to have been deliberate. As developed by the McMann Court in its review of the relevant legislative history, the concern of those sponsoring the (f)(2) exception was that it was needed in order to give employers "flexibility to hire older employees without incurring extraordinary expenses because of their inclusion in existing plans." McMann, 434 U.S. at 199-200, 98 S.Ct. at 448-449. The resulting encouragement to hire was thought to be of such overriding importance that, in the words of one of the exception's chief sponsors, Senator Javits, "the age discrimination law should not be used to fight the pension battle but ... we ought to subordinate the importance of adequate pension benefits for older workers in favor of the employment of such older workers...." Hearings on S. 830 before the Subcommittee on Labor and Public Welfare, 90th Cong., 1st Sess. 27 (1967). See McMann, 434 U.S. at 199-200, 98 S.Ct. at 448-449.[6]
 
 
 31
 We believe that the consequent failure of the (f)(2) exception to deal in express terms with age-based exclusions from benefit plans reflected a deliberate Congressional intention to treat them, for the time being at least, just as any other alleged violation of the ADEA to which a defense might be sought in the "bona fide/not subterfuge" exception.[7] That the matter was left this way in the ADEA primarily out of a Congressional concern not to discourage the hiring of older workers whereas the claimant here is an older worker excluded from a newly adopted plan does not of course alter the fact that it was left this way.
 
 
 32
 Seizing upon this point, however, claimant in oral argument before us sought in it one possible way out of her interpretive difficulty. The failure to include an older worker, already employed, in a new benefit plan is, she contended, for purposes of the ADEA, exactly comparable to the failure to hire an older worker because of an existing benefit plan. The latter was expressly exempted from the protection of (f)(2), so its exact counterpart, exclusion from a new plan, should be deemed also exempted. The short answer to this is that though Congress might well have done that (as it later did in ERISA), it did not; and we may not.
 
 
 33
 On this basis we hold that defendant may avoid liability for excluding claimant from the 1968 primary plan by establishing that the provision under which she was excluded was not a subterfuge to evade the purposes of the Act. We further hold that this may be done by proving that the provision was motivated by a legitimate business or economic purpose which, objectively assessed, reasonably justified it.
 
 
 34
 By way of rebutting or avoiding this affirmative defense, it will of course be open to the claimant to attempt to show that instead of a business or economic purpose the actual motivation for her exclusion was an ongoing "scheme, plan, stratagem or artifice of evasion," McMann, 434 U.S. at 203, 98 S.Ct. at 450, designed to thwart the purposes of the ADEA, i.e., that the plan as it affected her was a subterfuge. Relevant for this purpose would be any evidence related to the Hospital's dealings with claimant at the time of and following adoption of the 1968 primary and substitute plans that might bear upon the Hospital's motivation.[8]
 
 
 35
 Whether this affirmative defense was established could not properly be determined as a matter of law on the present summary judgment record. The Hospital's motivation is the dispositive issue and it is a disputable one of fact whose resolution requires remand.
 
 D
 
 36
 Because the district court apparently determined that the specific ADEA violation proven as a matter of law was the exclusion of claimant from the 1968 primary plan, it fixed basic damages in the amount to which she would have been entitled had she been included. This was an appropriate measure of the maximum[9] recovery for that violation.[10]
 
 
 37
 The court had no occasion to consider whether, if this violation were avoided by the (f)(2) defense, another might then have occurred in the admitted failure to pay claimant the benefits to which she would have been entitled under the 1968 substitute plan. Because this question may not arise upon remand, we do not address it now except to observe that we consider it an open one under the Act's general prohibition against conduct of employers that "... otherwise discriminate(s) against any individual with respect to his ... terms, conditions or privileges of employment, because of such individual's age" 29 U.S.C. § 623(a)(1). This question, along with the appropriate measure of damages, if such a violation is found, we leave for first instance consideration by the district court.
 
 II
 
 38
 On claimant's appeal from the district court's refusal to award liquidated damages, we also find error requiring that this issue be reconsidered if liability is again found. A discriminatee's remedies under the ADEA are those provided under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219 (1976), with certain specified exceptions. But in contrast to the automatic doubling of damages for violations of the FLSA, 29 U.S.C. § 216(b), section 7(b) of the ADEA, 29 U.S.C. § 626(b) (1976), allows liquidated damages only in the event of "willful violations." If allowed, they are equivalent to the amount of benefits denied a discriminatee such as claimant here claims to be.
 
 
 39
 The district court refused to award liquidated damages because "the standard defendants now find themselves bound by is a standard which was not known to men of old, and ... the court ought to be somewhat slow in lowering the boom on people who have not yet admitted that the old ways are over."
 
 
 40
 Claimant maintains that because her exclusion was "deliberate and purposeful rather than inadvertent and accidental," she is entitled to liquidated damages. The Hospital concedes, as it must, that its actions were purposeful, but argues simply that it had no intent to violate the statute, and that the absence of this intent makes its action not willful.
 
 
 41
 Though there is concededly some judicial support for this position, see, e.g., Syvock v. Milwaukee Boiler Mfg. Co., 665 F.2d 149 (7th Cir. 1981), this Circuit has recently rejected it, applying instead the FLSA test that "an employer acts willfully and subjects himself to (liability) if he knows or has reason to know, that his conduct is governed by (the Act)." Spagnuolo v. Whirlpool Corp., 641 F.2d 1109, 1113-14 (4th Cir. 1981), quoting Brennan v. Heard, 491 F.2d 1, 3 (5th Cir. 1974).
 
 
 42
 While the question of what constitutes actual or constructive knowledge that one's conduct is "governed by the Act" is necessarily open to interpretation depending upon the circumstances, it is obvious that the district court did not apply this test in refusing the award here. If violation is again found, the question should be reconsidered in light of Spagnuola and the facts proven. We would only observe that where liability turns solely upon an employer's ability to prove the absence of any subterfuge to evade the Act's purposes and that defense fails, it would seem difficult then to find a lack of actual knowledge that the challenged conduct was "governed by the Act."
 
 III
 
 43
 The judgment is reversed and the case remanded for further proceedings consistent with this opinion.
 
 
 44
 REVERSED AND REMANDED.
 
 
 
 [1]
 In pertinent part, the eligibility requirement read
 Every employee ... shall be eligible ... on September 27, 1968, or on any anniversary thereof coincidental with or next following, as the case may be, the date on which he or she has been in the continuous service of the EMPLOYERS for at least three (3) years, has attained twenty-five (25) years of age and has not attained fifty-six (56) years of age ....
 
 
 [2]
 As enacted in 1967, the exception read:
 (f) It shall not be unlawful for an employer, employment agency, or labor organization-
 (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual ....
 
 
 [3]
 Joining issue on this basis may fairly be taken as a concession by the claimant that the other predicates of the (f)(2) defense were present: i.e., that the plan was a "bona fide" one, and that claimant's exclusion resulted from the Hospital's "observ(ance)" of it. 29 U.S.C. § 623(f)(2). In any event we would hold these established as a matter of law on the summary judgment record. The Hospital plainly "observe(d) the terms" of its original plan in excluding claimant from participating in it. The plan was as plainly "bona fide" in the relevant, limited sense that "it exists and pays benefits." See United Air Lines, Inc. v. McMann, 434 U.S. 192, 194, 98 S.Ct. 444, 446, 54 L.Ed.2d 402 (1977); see also Smart v. Porter Paint Co., 630 F.2d 490, 494 (7th Cir. 1980)
 
 
 [4]
 Though on its appeal from the district court judgment the Hospital might have challenged not only the grant of claimant's motion for summary judgment but the denial of its own cross-motion for the same relief, the contention was not seriously advanced. If it were considered technically before us, we would reject it on the basis that Arthurs' affidavit standing alone would not establish as a matter of law that claimant's exclusion was excused under the (f)(2) exception as indisputably not a subterfuge. As our opinion indicates, we conclude that on the summary judgment record this presented a genuine issue of fact not properly resolved in favor of either party by summary judgment
 
 
 [5]
 Claimant cites several cases, each involving early retirement provisions adopted after the ADEA, as support for an argument that any such post-ADEA plan or amendment is, as a matter of law, a subterfuge. Her reliance is misplaced, for in each case an intent to evade the purposes of the ADEA was addressed. See, e.g., EEOC v. Baltimore and Ohio R.R., 632 F.2d 1107 (4th Cir. 1980); Smart v. Porter Paint Co., 630 F.2d 490 (7th Cir. 1980). See also Marshall v. Atlantic Container Line, 470 F.Supp. 71 (S.D.N.Y.1979) (retirement age reduction provision, adopted post-ADEA, found adequately explained)
 
 
 [6]
 The eventual complexities of ERISA concerning exclusion, vesting periods, etc., further demonstrate that pension reform was a separate battle and that Congress in 1967 intended to leave commonly established plans intact under the ADEA, barring "subterfuge" to evade its purposes, until these problems could be fully considered. See Alford v. City of Lubbock, 664 F.2d 1263, 1270-71 (5th Cir. 1982)
 
 
 [7]
 This was the interpretation generally placed upon the subsection's application to the age-based exclusion of newly hired older workers by the agency charged at the critical time with enforcement of the ADEA
 The Labor Department's original interpretation, first issued in 1968, provided that
 an employer is not required to provide older workers who are otherwise protected by the law with the same pension, retirement or insurance benefits as he provides to younger workers, so long as any differential between them is in accordance with the terms of a bona fide benefit plan. For example, an employer may provide lesser amounts of insurance coverage under a group insurance plan to older workers than he does to younger workers, where the plan is not a subterfuge to evade the purposes of the Act. A retirement, pension, or insurance plan will be considered in compliance with the statute where the actual amount of payment made, or cost incurred, in behalf of an older worker is equal to that made or incurred in behalf of a younger worker, even though the older worker may thereby receive a lesser amount of pension or retirement benefits, or insurance coverage. Further an employer may provide varying benefits under a bona fide plan to employees within the age group protected by the Act, when such benefits are determined by a formula involving age and length of service requirements.
 
 
 [29]
 C.F.R. § 860 (1976)
 More specifically, a March 2, 1977, Wage-Hour Opinion Letter issued by the Department stated
 Thus, where a pension plan provides for a defined benefit, such as a flat dollar amount per month after retirement or an amount determined by a formula based on salary and years of service, Section 4(f)(2) may justify the exclusion of an older worker hired when he or she is less than five years from the plan's stated "normal retirement age". The employer, in our view, would be able in such a case to demonstrate that the plan provision authorizing the exclusion is not a subterfuge to evade the purposes of the Act, since the substantial cost of funding a specific level of benefits in a relatively short period of time would be the reason for the exclusion. In other words, the employer could prove that cost, rather than age, explains the otherwise discriminatory practice. Under these circumstances, we would not assert any violation, provided that the other tests of the exception were met.
 This assumption of legality would not apply to a provision which excluded employees from a defined benefit plan who were hired when they were more than five years from normal retirement age and, in those cases, the employer, in order to qualify for the exception, would have to demonstrate that the longer exclusionary period was based on substantial cost considerations.
 ... (w)e have (also) concluded ... that where an employer excludes a newly hired older worker from a retirement plan, and that exclusion meets the terms of Section 4(f)(2) as set out above, the Act does not require that the excluded employee receive other payments in lieu of the employer's contributions to the benefit plan. In our judgment, it would be inconsistent with the purposes of Section 4(f)(2) to require that an employer, who is excluded from making pension contributions on the employee's behalf, to nevertheless make those payments in cash, particularly where the purpose of pension plans is to provide deferred, rather than present compensation. The Section 4(f)(2) exception was intended to protect the older worker's opportunities for employment, and so long as the primary objective of employment is met, no other compensatory payments are required by the Act, where the employer proves entitlement to the exception. There may, of course, be other types of employee benefit plans (other than pension or retirement plans) where an equivalent cash value would be required.
 
 
 [2]
 Empl.Prac.Guide (CCH) P 5022
 
 
 [8]
 Based upon the forecast in claimant's summary judgment motion papers, this might include evidence of the relative benefits under the primary and substitute plans; the extent to which the Hospital advised claimant of the relative benefits; the Hospital's failure to tack claimant's ostensible period of coverage under the substitute plan to her period of enrollment in the 1976 plan for purposes of calculating the length of her participation in the latter at the time of her retirement; the failure of the Hospital to add to the amount of claimant's entitlement under the 1976 plan the amount to which she would have been entitled under the 1968 substitute plan; and the extent to which the Hospital failed to keep claimant fairly apprised throughout of her status in relation to retirement benefits
 
 
 [9]
 On appeal the Hospital also argues that if claimant should in fact have been included in the original plan, her entitlement under that plan would have been determined at her normal retirement date in 1975; that she would not then have been entitled to any additional benefits under the amended plan; and that, therefore, the entitlement she did receive under this latter plan should be credited against any amount to which she would be entitled for her unlawful exclusion from the original plan. The Hospital indicated at oral argument that this contention was not addressed by the court below and we think that it should be first considered there, if necessary, on remand
 
 
 [10]
 This figure would represent direct damages for an employee's discriminatory exclusion from a pension plan's monetary benefits and, as such, would directly parallel the direct damages specifically authorized by the Act for discriminatory denials of compensation: "unpaid minimum wages, or ... unpaid overtime compensation." 29 U.S.C. § 216(b) (FLSA); 29 U.S.C. § 626(b) (borrowing remedies from § 216(b)); 29 U.S.C. § 626(c) (private action). The general thrust of decisions of this and other circuits interpreting the scope of the monetary relief authorized for enforcement of the ADEA by borrowing from cross-referenced provisions of the FLSA is that it is confined to the award of amounts directly restitutionary or compensatory of the specific violation found. See, e.g., Slatin v. Stanford Research Institute, 590 F.2d 1292 (4th Cir. 1979) (compensation for pain and suffering not authorized); Vazquez v. Eastern Air Lines, Inc., 579 F.2d 107 (1st Cir. 1978) (same)