**Robert W. JOHNSON and Marie A. Siemon, personal representative of the Estate of Otto Siemon, Plaintiffs,**

**v.**

**MAYOR AND CITY COUNCIL OF BALTIMORE, and Hyman A. Pressman, Chairman, Frank Battaglia, Edward C. Heckrotte, Sr., Charles Daugherty, Charles F. Peace, III, and William R. Holland, Jr., members of the Board of Trustees, Fire and Police Employees Retirement System of the City of Baltimore, Defendants.**

**Civ. No. H–81–3253.**

United States District Court, D. Maryland.

June 17, 1986.

---

William H. Engelman, Harriet E. Cooperman and Kaplan, Heyman, Greenberg, Engelman and Belgrad, P.A., and Paul D. Bekman and Israelson, Jackson & Salsbury, Baltimore, Md., for plaintiffs.

Ambrose T. Hartman, Deputy City Solicitor and L. William Gawlik, Asst. City Solicitor, Baltimore, Md., for defendants.

ALEXANDER HARVEY, II, Chief Judge.

This civil action has been brought because the City of Baltimore has continued in its efforts to avoid the strictures of the Age Discrimination in Employment Act of 1967, (the "ADEA"), insofar as certain Fire Department employees are concerned. In *Johnson v. Mayor and City Council of Baltimore,* —— U.S. ——, 105 S.Ct. 2717, 86 L.Ed.2d 286 (1985), the Supreme Court in a unanimous opinion upheld this Court's determination in *Johnson v. Mayor and City Council of Baltimore, (Johnson I)* 515 F.Supp. 1287 (D.Md.1981), that certain provisions of the Baltimore City Code violated the ADEA.

This Court's Opinion in the *Johnson* case was filed on June 9, 1981, and the Court's Judgment and Decree was entered on August 13, 1981. Named as defendants in that case were the Mayor and City Council of Baltimore and the Chairman and members of the Board of Trustees of the Fire and Police Employees Retirement System of the City of Baltimore (hereinafter the

"FPERS").[1] Shortly after this Court's Judgment and Decree was entered in the *Johnson* case, the Deputy City Solicitor formally advised the Board of Trustees that this Court's decision had no bearing on any provisions of the System other than those which required the retirement at age 60 of those employees who were members of the System before 1962 and at age 55 of those employees who became members since 1962.[2]

Plaintiff Johnson chose to retire on November 15, 1981 at which time he was 62 years of age. When advised that pursuant to the opinion of the Deputy City Solicitor he would not be given credit under FPERS for any years of service after he had attained the age of 60, Johnson promptly filed this second suit, (hereinafter *"Johnson II"*). Subsequently, he was joined in this action by Marie A. Siemon, the widow of Otto Sieman who died at age 62 while he was still employed as a Baltimore City firefighter. The defendants in this case are the same as those named in *Johnson I.* The principal difference is that a separate provision of the Baltimore City Code is here challenged. In *Johnson I,* this Court found that § 34(a)(2) and (4) of Article 22 of the Baltimore City Code violated provisions of the ADEA. In *Johnson II,* the pending case, plaintiffs are challenging the Deputy City Solicitor's interpretation of § 34(b)(2) of Article 22.

Proceedings in this case were stayed pending the City's appeal of the *Johnson I* decision. In a 2–1 opinion with Chief Judge Winter dissenting, the Fourth Circuit reversed this Court's *Johnson I* decision. *Johnson v. Mayor and City Council of Baltimore,* 731 F.2d 209 (4th Cir.1984). Certiorari was thereafter granted by the

Supreme Court and in a unanimous 9–0 opinion, the Supreme Court reversed the Fourth Circuit. *Johnson v. Mayor and City Council,* —— U.S. ——, 105 S.Ct. 2717, 86 L.Ed.2d 286 (1985).[3]

The parties to this suit then engaged in discovery, following which it was determined that the issues in this case could properly be presented to the Court by way of cross motions for summary judgment. Cross motions for summary judgment were duly filed together with memoranda of law and exhibits, and a hearing on the motions has been held in open Court. For the reasons to be stated herein, plaintiffs' cross motion for summary judgment will be granted and defendants' cross motion for summary judgment will be denied.

## I

### *The Challenged Provisions of Law*

As noted in *Johnson I, supra,* employees of the Baltimore City Fire Department prior to 1962 were covered by the Employees Retirement System of the City of Baltimore (hereinafter "the ERS"). This pension and retirement system contains a provision for mandatory retirement at age 70. In 1962, the Baltimore City Council approved an Ordinance establishing a new retirement system for firefighters and policemen only, namely the FPERS which is at issue here.

In *Johnson I,* this Court concluded that § 34(a)(2) and (4) of Article 22 of the Baltimore City Code, as amended, requiring the plaintiffs in that action[4] to be retired at age 55 or age 60, were violative of the ADEA, as amended, 29 U.S.C. § 621 *et seq.* This case arises as a result of the interpre-

---

**1.** Defendants will be referred to herein collectively as the "City" defendants.

**2.** Whatever the validity of this opinion, it clearly overlooked Paragraph 4 of the Decree, which had required defendants to grant plaintiff Johnson the period from April 30, 1979 to June 11, 1979 as "creditable service" within the meaning of § 32 of Article 22 of the Baltimore City Code.

**3.** The case was then remanded to the Fourth Circuit for further proceedings. On August 26,

1985, the Fourth Circuit affirmed this Court's Judgment and Decree.

**4.** In *Johnson I* there were six plaintiffs, all of whom were Baltimore City firefighters. Five of the six were over 60 years of age and would have been mandatorily retired under provisions of the City Code had they not filed the suit. The other was 32 years of age and would have been retired at age 55 under provisions of the City Code.

tation given by counsel for the City to § 34(b)(2) of Article 22, which provides in part as follows:

(b) Allowance on service retirement. Upon retirement from service a member shall receive a service retirement allowance which shall consist of:

\*　　\*　　\*　　\*　　\*　　\*

(2) For each year of service, in addition to his annuity, a pension which shall be equal to one one-hundredth of his average final compensation for each of the first twenty-five years of service, less any prior service, and one one-hundred twentieth of his average final compensation for each year after the first twenty five years of service less any prior service.

In a letter dated September 29, 1981 addressed to the Board of Trustees of FPERS, Deputy City Solicitor Ambrose T. Hartman said the following:

As you know, the United States District Court for the District of Maryland recently ruled that the provision of the F & P System which requires the retirement at age 60 for those employees who were members of the System prior to 1962 and age 55 for those members who have become members since 1962 violates the federal Age Discrimination in Employment Act. This has no bearing on the other provisions of the F & P System. In other words, any employee who requests to remain in service beyond the Retirement ages specified in the F & P System will not accrue time for accredation [sic] under the System beyond the ages of 55 and 60 as the case may be. Such a person will likewise be not entitled to any of the other benefits provided for by the System for any period of time he remains in service beyond the age of retirement specified by the System.

Plaintiffs are here contending that the Deputy City Solicitor's interpretation of § 34(b)(2) violates 29 U.S.C. § 623(a)(1). That provision of the ADEA makes it un-

lawful for an employer to "otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; . . . ."

In contending that its interpretation of § 34(b)(2) does not violate the ADEA, defendants rely on 29 U.S.C. § 623(f)(2), which provides as follows:

(f) It shall not be unlawful for an employer

\*　　\*　　\*　　\*　　\*　　\*

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual.

## II

### Facts

Plaintiff Johnson commenced his employment with the Baltimore City Fire Department in October of 1943, and in 1962, he became a member of the FPERS. On April 29, 1979, Johnson reached the age of 60, and on May 1, 1979, he was involuntarily retired pursuant to § 34(a)(4) of Article 22 of the Baltimore City Code. In *Johnson I,* the plaintiff sought a decree of this Court which would have permitted him to continue his employment if he wished to do so until age 65. Pursuant to the Judgment and Decree entered in *Johnson I,* plaintiff could have worked to that age had he so desired.

Otto Siemon commenced his employment with the Baltimore City Fire Department in

January of 1950. On January 20, 1981, Siemon attained the age of 60 years. However, in view of the pendency of *Johnson I* at that time, an Order was entered enjoining defendants from requiring Siemon's mandatory retirement and permitting him to continue his employment with the City.[5] Pursuant to the *Johnson I* opinion, Siemon could have continued his employment until age 65 had he chosen to do so.

Plaintiff Johnson chose to retire on November 15, 1981, when he was 62 years of age. Defendants thereupon computed the pension benefits of plaintiff Johnson in accordance with the instructions given by the Deputy City Solicitor in his letter of September 29, 1981. Accordingly, Johnson was not given credit for any time that he worked after he attained the age of 60. As a result, plaintiff Johnson is receiving a pension of some $10,226 per year. Had he been given credit for the time he worked after reaching the age of 60, plaintiff Johnson would be receiving a pension of some $12,775 per year.

On December 22, 1982, Otto Siemon died while still on active duty as a Baltimore City firefighter. His widow, the plaintiff Marie A. Siemon, filed an application with the FPERS for death benefits. By letter dated February 4, 1983, defendants informed plaintiff Siemon that they were computing the benefits due her as if her husband had retired on February 1, 1981 at 60 years of age. Computing the benefits due plaintiff Siemon in this manner, defendants gave Otto Siemon no credit for the time he worked after reaching 60 years of age. Defendants further refused to recognize him as being in active service when he died. As a result, plaintiff Siemon is receiving benefits totalling some $3,710 per year, as opposed to benefits of some $8,886 per year which she would be receiving if Otto Siemon had been given full credit for being in active service until his death on December 22, 1982.

5. That Order was entered in the related case of *Beckner v. Mayor and City Council of Baltimore,*

## III

### Discussion

As noted in *Johnson I,* one of the purposes of Congress in enacting the ADEA in 1967 was to prohibit arbitrary age discrimination in employment. *See* 515 F.Supp. at 1290. Plaintiffs assert that the manner in which defendants have chosen to treat them for both pension benefits and for widow's benefits amounts to unlawful discrimination against both plaintiff Johnson and the decedent Otto Siemon with respect to employment privileges enjoyed by each of these firefighters, in violation of § 623(a)(1). This Court would agree.

Significantly there is nothing in § 34(b)(2) which requires the trustees of the FPERS to treat plaintiff Johnson and the decedent Siemon differently after each of them reached the age of 60. Thus, it is not a provision of the Baltimore City Code which is being challenged as violative of ADEA. Rather, it is the Deputy City Solicitor's interpretation of § 34(b)(2) which results in the age discrimination to which the plaintiffs have been subjected. Counsel for the defendants concede that there is nothing in § 34(b)(2) suggesting the interpretation which counsel for the City have chosen to give to it. Defendants argue that the legal basis for treating Johnson and Siemon differently from other active firefighters after they reached the age of 60 is a City policy that, when an employee is mandatorily retired but continues to work, he must be employed on a contract basis.

The Court would note that the *Johnson I* case was decided in June of 1981. No attempt was made thereafter to amend the Baltimore City Code. However, on September 29, 1981, the Deputy City Solicitor instructed the Board of Trustees that even though a firefighter must, pursuant to this Court's ruling, be permitted to work be-

Civil No. H–80–2395.

yond the age of 60, such person "would not be entitled to benefits provided by FPERS for any period of time he remained in service beyond both the ages of retirement specified by the System."

■ This Court first concludes that, as a matter of statutory construction, the interpretation given to § 34(b)(2) by the Deputy City Solicitor is clearly not supportable. The applicable provisions permit a firefighter upon retirement to receive a service retirement allowance "For each year of service...." No distinction is made in the Ordinance between service before age 60 and that after such age. When § 34(b)(2) permitted a retired firefighter to receive one one-hundred twentieth of his average final compensation for each year after the first 25 years of service less any prior service, the Ordinance on its face required that all such service be included, whether before or after the age of 60. When *Johnson I* permitted both Johnson and Siemon to work beyond age 60, the applicable provisions of § 34(b)(2), in the absence of any amendment, required that service after age 60 be treated in the same manner as service before age 60.

At a meeting of the Board of Trustees of FPERS held on October 15, 1981, the Chairman of the Board, Hyman A. Pressman (who is also the City Comptroller), questioned the interpretation of the Ordinance which defendants have relied on in this case. The following colloquy ensued (Tr. p. 7–8):

> Mr. Pressman: * * * I would like to give you an opportunity to convince me because my inclination is that if the Court said that you [can] work over a certain time and the law says for all time that you can work after that certain time, anything that says you can't work over that time is against Federal law ... after deciding that .. and the Ordinance says that you get credit while you are working....
>
> Mr. Hartman: Only up to ages 60 and 55....
>
> Mr. Pressman: Now wait a minute it doesn't say you only get credit up to age 60. It says you get credit for each year of service.

Defendants' construction of the Ordinance is particularly insupportable insofar as plaintiff Siemon is concerned. In refusing to give Otto Siemon credit for any time he worked after reaching 60 years of age and in failing to recognize him as being in active service at all when he died, defendants in effect are taking the position that Mrs. Siemon was a widow of a member who had first retired and who had later died. The facts here are to the contrary. Otto Siemon did not retire at age 60, and he was clearly in active service when he died on December 22, 1982. The mere fact that he was more than 60 years of age was of no consequence at all. As was determined by *Johnson I*, Otto Siemon was required to be treated by defendants as an active firefighter at the time of his death and not as one who had retired.

In implementing the Deputy City Solicitor's construction of § 34(b)(2) which has resulted in reduced benefits to both plaintiffs, defendants seek as a matter of "policy" to treat Johnson, Siemon and other firefighters who continue to work beyond the age of 60 as "contract" employees. Defendants plan to employ these firefighters under a written contract whereby the employee would be treated as if he had retired. He would be thereafter employed on an annual basis at a wage which together with his service retirement would equal what he would have made had he not reached 60.[6]

---

**6.** This contract arrangement has previously been used for other City employees who were covered by ERS and who chose to (and were permitted to) work beyond 70 years of age. It should be noted that the ADEA protects employees only up to 70 years of age. *See* 29 U.S.C. § 631.

Once again, there is nothing in the FPERS Ordinance to permit defendants to treat plaintiff Johnson and the decedent Siemon differently after each of them reached the age of 60 from the manner in which they were treated before they reached that age. In seeking to classify plaintiff Johnson and the decedent Siemon as "contract" employees, defendants have discriminated against them on the basis of their age, in violation of the ADEA.[7]

The City defendants would hardly be permitted to establish desired policy merely by construing statutory provisions in a manner consistent with that policy. The interpretation relied upon by the defendants in this case could be accomplished only by means of an amendment to the Ordinance. Only the Baltimore City Council is empowered to amend the Baltimore City Code, not the Deputy City Solicitor.

■ Secondly, even if § 34(b)(2) could be construed in the manner suggested by the Deputy City Solicitor, the Ordinance would, as applied to these plaintiffs, be in violation of the ADEA. Defendants assert that theirs is a *bona fide* seniority system covered by 29 U.S.C. § 623(f)(2) and that therefore they have the right to treat plaintiff Johnson and the decedent Siemon differently from firefighters who are less than 60 years of age.

The Fourth Circuit has held that before a pension or benefit plan may be exempted under § 623(f)(2) from the age discrimination prohibitions of § 623(a)(1), an employer must (1) observe the terms (2) of a *bona fide* pension plan, (3) which is not a subterfuge to avoid the purposes of the Act. *EEOC v. Baltimore & Ohio Railroad Co.*, 632 F.2d 1107, 1110 (4th Cir.1980). The plan relied upon in this case did not even come into being until September 29, 1981 when the interpretation in question was given to it by the Deputy City Solicitor.

Thus, this is not a case in which there was a preexisting pension plan. Before September 29, 1981, the Board of Trustees of FPERS were required, for purpose of computing a retirement allowance, to give a firefighter credit for every year of active service. After that date, they were required by the legal opinion rendered, not to credit any year of active service after a firefighter reached 60 years of age, even though *Johnson I* had permitted the plaintiffs to continue in active service after age 60.

■ Moreover, the interpretation in question was clearly a subterfuge to avoid the purposes of the Act. Counsel for the City chose to construe *Johnson I* as holding that firefighters had the right to continue working after age 60 but had no right to be treated after that age in the same manner as younger members of the Fire Department. The interpretation given to the Ordinance by the Deputy City Solicitor and the "contract" employee arrangement amount to little more than an attempt to circumvent this Court's prior ruling. *Johnson I* held that the ADEA does not permit the City to treat firefighters above the age of 60 differently from those who are below that age. Yet that is exactly what the City attempted to do here. Pension benefits are part of an employee's compensation. The so-called "contract" arrangements established terms and conditions of employment for firefighters over 60. But § 4(a)(1) of the ADEA flatly prohibits age discrimination against an individual with respect to his compensation and also with respect to the terms and conditions of his employment. In construing the Ordinance so as to deny Johnson and Siemon increased benefits and so as to afford them different employment treatment from that of younger firefighters, the City's obvious intention was to avoid the purposes of the Act.

The legislative history relied upon by the defendants is not pertinent to the issues presented in this case. Section 4(f)(2) may

---

7. Benefits are clearly not the same for a firefighter employed under such a contract as for one employed under standard arrangements.

In their supplementary Memorandum, counsel for the City concede that there are differences in the level of some benefits.

well have been intended to allow age to be considered in funding a plan and in determining the level of benefits to be paid. As the Fourth Circuit noted in *Crosland v. Charlotte Eye, Ear & Throat Hospital,* 686 F.2d 208 (4th Cir.1982), a plan which discriminates on the basis of age would not be viewed as a subterfuge if the employer could prove a business or economic purpose rather than an intention to evade the purposes of the ADEA. However, the facts here do not indicate that the financial integrity of FPERS will be adversely affected if individual firefighters are permitted to work and accrue pension benefits to age 65.[8] Indeed, at the hearing on the motions, counsel for the defendants conceded that there was no actuarial or statistical support for the contention that if the plaintiffs' prevailed, the FPERS system would become financially unsound.

## IV

### Conclusion

For the reasons stated, plaintiffs cross motion for summary judgment is hereby granted, and defendants' cross motion for summary judgment is hereby denied. Plaintiffs are thus entitled to appropriate declaratory judgment and injunction. In addition, plaintiffs are entitled to attorneys' fees in an amount to be determined by the Court at a later date, as well as costs. Counsel should meet and undertake to agree on the form of a Judgment and Decree to be entered herein.

---

**8.** Evidence presented by plaintiffs indicates that the System known as FPERS would actually benefit financially if firefighters retired at a later age than 60.