**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**STATE OF MAINE and Maine State Retirement System, Defendants.**

Civ. No. 86–0185 P.

United States District Court, D. Maine.

Sept. 18, 1986.

David Ingram, Sr. Trial Atty., E.E.O.C., New York City, for plaintiff.

William R. Stokes, Asst. Atty. Gen., Augusta, Me., for defendants.

MEMORANDUM OF DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION TO DISMISS

GENE CARTER, District Judge.

In this action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C.

§§ 621 to 634 (1982 & Supp. III 1985), Plaintiff, United States Equal Employment Opportunity Commission (EEOC), asks that the provisions of 5 M.R.S.A. § 1122 be declared in violation of section 4(a) of the ADEA. Prior to filing their Answer, Defendants, Maine State Government (State) and Maine State Retirement System (MSRS), moved that the Complaint be dismissed for failure to state a claim upon which relief can be granted under F.R. Civ.P. 12(b)(6). In response, EEOC seeks partial summary judgment on the issue of liability. The issue before the Court is whether section 1122 is exempt from the ADEA as a matter of law.[1] The Court finds that section 1122 is *per se* exempt under section 4(f)(2) of the ADEA.

EEOC initiated the present action after efforts at conciliation had failed. EEOC alleges that 5 M.R.S.A. § 1122 incorporates a policy of denying long-term disability benefits to State workers who become disabled after obtaining age 60 while offering those benefits to younger workers. It seeks declaratory relief, injunctive relief, and money damages of back benefits for those individuals adversely affected by the State statutory scheme.

It is not disputed that section 1122 contains an overt age-based discrimination.[2] Specifically, section 1122(1) establishes the eligibility of members of MSRS to apply for disability retirement benefits. It restricts these benefits to those members who become permanently disabled prior to reaching age 60. 5 M.R.S.A. § 1122(1). Workers who become permanently disabled after reaching age 60 receive normal service retirement benefits. *See id.* § 1121(1). Disability retirement benefits generally extend to the tenth anniversary of the disabled worker's normal retirement date, after which the worker receives normal service retirement benefits. *Id.* § 1122(3)(A) and (B). According to the statutory scheme, benefits under a disability retirement allowance are in most cases more generous than benefits under a normal service retirement allowance.

■ EEOC correctly claims that State's overt age-based policy on its face violates section 4(a) of the ADEA. 29 U.S.C. § 623(a).[3] Since EEOC has established a *prima facie* case of discrimination, State has the burden of establishing that its actions fall within any of the ADEA's exceptions. *EEOC v. Westinghouse Electric Corp.*, 725 F.2d 211, 223 (3d Cir.1983), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984).

■ State relies on section 4(f)(2) of the ADEA which provides that employer ac-

---

1. The Court today does not reach the question of whether State has waived any factual issues applicable to EEOC's Motion for Partial Summary Judgment due to State's failure to respond within ten days as required by Local Rule 19(c). *Cf. Greene v. Union Mutual Life Insurance Company*, 764 F.2d 19, 22 (1st Cir.1985) (dismissal for failure to comply with Local Rule 19(c) unwarranted absent prejudice and a separate basis for dismissal).

2. The statute provides in part:
Any eligible member who, while in service and prior to attaining age 60 or reaching the normal retirement age for a particular group of employees, if earlier, has become mentally or physically incapacitated to such an extent that it is impossible for him to perform the duties of his employment position, may, if such incapacity can be expected to be permanent, retire on a disability retirement allowance upon written application to the executive director and approval of the application by the executive director.

5 M.R.S.A. § 1122(1) (1979).

3. Section 4(a) of the Act contains the general prohibition against age-based discrimination. It provides:
It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
(3) to reduce the wage rate of any employee in order to comply with this chapter.
29 U.S.C. § 623(a) (1982).

tions taken in observance of any employee benefit plan are not discriminatory if the plan meets the following criteria: (1) the plan must be *bona fide;* and (2) the plan must not be a subterfuge to evade the purposes of the ADEA. 29 U.S.C. § 623(f)(2) (1982).[4] The Court recognizes that since section 4(f)(2) is an exception to remedial social legislation, it is to be narrowly construed.

Relying on the interpretation given section 4(f)(2) in *United Air Lines, Inc. v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), and on the chronology of its plan, State seeks to meet its burden by arguing that section 1122 is a *bona fide* plan because it "exists and pays benefits," *McMann,* 434 U.S. at 194, 98 S.Ct. at 446, and cannot be a subterfuge to evade the ADEA since it antedates the ADEA by several decades. *Id.* at 203, 98 S.Ct. at 450. EEOC disputes State's reliance on *McMann* and asserts that *McMann* was overruled in its entirety by the 1978 amendment to section 4(f)(2). EEOC argues that the post-*McMann* criteria require the Court to find both that State's plan is not *bona fide* because it pays no benefits to a class of older persons and that State cannot show an absence of subterfuge by relying on its plan's chronology. EEOC alleges that State can meet its burden of demonstrating the absence of subterfuge only by showing a "legitimate business purpose or economic purpose which, objectively assessed, reasonably justifie[s]" the age-based differentiation in State's benefits plan. *Crosland v. Charlotte Eye, Ear & Throat Hospital,* 686 F.2d 208, 215 (4th Cir.1982); 29 C.F.R. 860.120 (1985). The Court turns first to a consideration of the *McMann* decision and the language of the 1978 amendment.

The employer in *McMann* had adopted a retirement plan in 1941. Under the terms of that plan, the employer had forced complainant to retire at age 60, the plan's mandatory retirement age. Because the plan existed, paid benefits, and antedated the adoption of the ADEA, the Court held that the employer's actions fell within the plain meaning of section 4(f)(2) and rejected any "per se rule requiring an employer to show an economic or business purpose in order to satisfy the subterfuge language of the Act." *McMann,* 434 U.S. at 203, 98 S.Ct. at 450. Thus, the result of the Court's holding was to permit the involuntary retirement of employees at whatever age was specified in *bona fide* plans that antedated the ADEA. Congress expressly overruled this result in 1978 by adding the following language to section 4(f)(2): "and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual ... because of the age of such individual." Pub.L. 95–256, § 2(a), 92 Stat. 189 (1978) (codified as amended at 29 U.S.C. § 623(f)(2) (1982)).

■ Based on the plain language of the 1978 amendment, this Court finds that Congress removed involuntary retirements from the protection of section 4(f)(2). The amendment, however, left undisturbed the *McMann* Court's interpretation of the terms *"bona fide"* and *"subterfuge." See Crosland,* 686 F.2d at 213. If Congress had wished to state that a plan's chronology alone would not satisfy the "subterfuge" prong of section 4(f)(2), it could have plainly said so. Since Congress's language merely prohibits the involuntary termination of any worker under an exempt retirement plan, this Court assumes that Con-

---

**4.** The statute provides:

It shall not be unlawful for an employer, employment agency, or labor organization—
....
(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that

no such employee benefit plan shall excuse the failure to hire any individual, *and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual.* 29 U.S.C. § 623(f)(2) (1982) (underlined provisions added by Pub.L. 95–256, § 2(a), Apr. 6, 1978, 92 Stat. 189).

gress meant no more than it expressly stated.[5]

■ The Court also finds that State's statutory provisions fall within the protection of section 4(f)(2). The Court first notes that the applicability since *McMann* of section 4(f)(2) to a plan that antedates the ADEA is apparently a matter of first impression. *Cf. Crosland, supra,* (employer's plan adopted three months after enactment of ADEA); *EEOC v. Home Insurance Company,* 672 F.2d 252 (2d Cir.1982) (age-based amendment adopted in 1974); *Alford v. City of Lubbock,* 664 F.2d 1263 (5th Cir.) (mandatory retirement under pre-ADEA plan occurred prior to 1978 amendment), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 848 (1982).

Applying the provisions of section 4(f)(2) to the challenged statute, the Court finds that State's scheme is an employee benefit plan within the meaning of section 4(f)(2). *Cf. EEOC v. Westinghouse Electric Corp.,* 725 F.2d at 224–25 (employer's 'lay-off income and benefits' plan not an employee benefit plan within the meaning of section 4(f)(2)); *EEOC v. Borden's, Inc.,* 724 F.2d 1390, 1396 (9th Cir.1984) (employer's severance pay plan not an employee benefit plan within the meaning of section 4(f)(2)). Moreover, State's plan does not require mandatory retirement of any employee. Instead, State offers a variety of retirement plan benefits to permanently disabled workers.

Second, the Court finds that State's plan is *bona fide* within the meaning of section 4(f)(2). EEOC does not assert, nor can it be seriously contended, either that MSRS does not exist or that it does not pay benefits. Instead, EEOC invites the Court to adopt a definition of *bona fide* that turns on the status of the challenging party. This construction would render the *"bona fide"* prong of section 4(f)(2) useless. Any plan that excludes workers on the basis of age violates the prohibitions of the ADEA. The exception of section 4(f)(2) is designed to apply to such plans. Under the definition offered by EEOC, any plan seeking the protection of section 4(f)(2) would fail the *"bona fide"* criterion because it would necessarily exclude some workers on the basis of age. The Court declines the invitation to eviscerate the statutory language in this manner. *Alford,* 664 F.2d at 1268–69 (rejecting argument that plan was not *bona fide* because it did not pay benefits to complainants).

Third, State's plan cannot be a subterfuge to evade the ADEA as it clearly antedates the Act by several decades. Section 1122 traces its origin to chapter 328 of Public Laws of 1941, which fixed eligibility for disability retirement benefits at age 65. In 1947, the legislature lowered the age requirement from 65 to 60. P.L.1947, c. 384, § 7; R.S. 1954, c. 64. The age requirement has remained unchanged since that date, although the legislature has amended the section several times: in 1975, to eliminate a minimum-number-of-years-of-service requirement, P.L. 1975, c. 622, § 54; and in 1977, to eliminate a reference to mandatory retirement, P.L. 1977, c. 580, § 12. None of these amendments involved age-based discriminations. *Cf. EEOC v. Home Insurance Company,* 672 F.2d at 259 n. 9.

■ The Court concludes that *bona fide* employee benefit plans whose age-based provisions antedate the ADEA are *per se* exempt under section 4(f)(2) unless they require mandatory retirement. State's plan, therefore, falls within the protection of section 4(f)(2). State and MSRS are entitled to dismissal of the complaint against them.

Accordingly, the Defendants' Motion for Dismissal of the Complaint is hereby GRANTED.

So ORDERED.

---

**5.** The Court's review of the proffered legislative history of both the ADEA and the 1978 amendment has failed to convince the Court of a contrary intention. Although ambiguities abound, Congress's apparent intention was to promote the hiring of older workers, to eliminate mandatory retirement, but not to require equality of benefits received under employee benefit plans.