**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Appellant.**

**No. 86–1226.**

United States Court of Appeals, Third Circuit.

Argued Oct. 20, 1987.

Decided Feb. 2, 1989.

Certiorari Granted Oct. 2, 1989.

On Remand from the Supreme Court of the United States Oct. 2, 1989.

Argued on Remand from the Supreme Court Jan. 16, 1990.

Panel Rehearing Granted Sept. 20, 1990.

Decided Jan. 31, 1991.

Jerome J. Shestack (argued on Jan. 16, 1990 and at panel rehearing on Oct. 9, 1990), Deena Jo Schneider, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Andrew M. Kramer, Patricia A. Dunn, Glen D. Nager, Jones, Day, Reavis & Pogue, Washington, D.C., Henry W. Ewalt, Westinghouse Elec. Corp., Pittsburgh, Pa., Moses Lasky, Lasky, Haas, Cohler, & Munter, P.C., San Francisco, Cal., for appellant.

Vella M. Fink (argued on Jan. 16, 1990), Carolyn L. Wheeler (argued at panel rehearing on Oct. 9, 1990), Donald R. Living-

ston, Gwendolyn Young Reams, E.E.O.C., Washington, D.C., for appellee.

Ann Elizabeth Reesman, McGuiness & Williams, Washington, D.C., for amicus curiae, Equal Employment Advisory Council on behalf of appellant.

Cathy Ventrell–Monsees, American Ass'n of Retired Persons, Washington, D.C., for amicus curiae, American Ass'n of Retired Persons on behalf of appellee.

Argued Oct. 20, 1987.

Before HIGGINBOTHAM, Chief Judge, and SCIRICA and GARTH, Circuit Judges.

Argued on Remand from the Supreme Court Jan. 16, 1990.

Before HIGGINBOTHAM, Chief Judge, and SCIRICA and GARTH, Circuit Judges.

Reargued Oct. 9, 1990.

Before HIGGINBOTHAM, Chief Judge, and BECKER and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

This appeal arises from an action by the Equal Employment Opportunity Commission ("EEOC") against Westinghouse Electric Corporation based on the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1988), which prohibits employers from discriminating on the basis of age with respect to an employee's compensation or the terms, conditions, or privileges of employment. *Id.* § 623(a)(1). Following a bench trial, the district court found that Westinghouse had willfully violated ADEA through the use of discriminatory severance plans that provided severance benefits solely to laid-off employees who were not otherwise eligible to retire. The district court enjoined Westinghouse from denying severance pay to retirement-eligible employees. *E.E.O.C. v. Westinghouse Electric,* 632 F.Supp. 343, 350 (E.D. Pa.1986). On appeal, we affirmed the district court's determination that the plans violated ADEA but we remanded to the district court for reevaluation of the finding that Westinghouse had acted willfully. *E.E.O.C. v. Westinghouse Electric,* 869 F.2d 696, 699 (3d Cir.1989) (*"Westinghouse II"*).[1]

On October 2, 1989, the Supreme Court vacated our decision and remanded this case to us for further consideration in light of *Public Employees Retirement System of Ohio v. Betts,* 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). *Westinghouse Electric v. E.E.O.C.,* — U.S. —, 110 S.Ct. 37, 107 L.Ed.2d 7 (1989). Upon review, we held that our original decision could not stand in light of the standards announced in *Betts.* In panel opinions dated July 5, 1990, one pertaining to the Pennsylvania action, No. 86–1226, the other pertaining to EEOC's New Jersey action, No. 87–5174, we entered judgment in favor of Westinghouse on all EEOC claims. *E.E. O.C. v. Westinghouse Electric,* 907 F.2d 1354 (3d Cir.1990), *vacated, E.E.O.C. v. Westinghouse Electric,* 917 F.2d 124 (3d Cir.1990); *E.E.O.C. v. Westinghouse Electric,* 907 F.2d 1365 (3d Cir.1990), *vacated, E.E.O.C. v. Westinghouse Electric,* 917 F.2d 123 (3d Cir.1990). We held, *inter alia,* that EEOC had not established that the Westinghouse Severance Plans were a

---

1. *E.E.O.C. v. Westinghouse Electric,* 725 F.2d 211 (3d Cir.1984) (*"Westinghouse I"*), arose from a complaint filed by EEOC in the District Court for the District of New Jersey in 1980. *Id.* at 214. *See E.E.O.C. v. Westinghouse Electric,* 577 F.Supp. 1029 (D.N.J.1982). EEOC charged that Westinghouse's plans violated ADEA. We reversed a summary judgment, entered in favor of Westinghouse, on the grounds that the district court erred in its application of the statute of limitations. 725 F.2d at 221. Subsequently, the district court, holding that a two year statute of limitations applied, dismissed EEOC's action as time-barred. *E.E.O.C. v. Westinghouse Electric,*

651 F.Supp. 1172 (D.N.J.1987). In our July 5, 1990 opinion, 907 F.2d 1365 (3d Cir.1990), we had affirmed the New Jersey district court's order entering summary judgment in favor of Westinghouse in that case, No. 87–5174. That opinion, as we note in text, was vacated on October 30, 1990, nunc pro tunc to September 20, 1990, at the same time that we vacated the companion Pennsylvania opinion in the instant case, No. 86–1226. *E.E.O.C. v. Westinghouse Electric,* 917 F.2d 123 (3d Cir.1990); *E.E.O.C. v. Westinghouse Electric,* 917 F.2d 124 (3d Cir. 1990).

subterfuge that discriminated against older workers as to recall rights.[2]

We vacated the July 5, 1990 panel opinions, as noted above, in response to EEOC's Petition for Rehearing, which was based on the ground that the fringe benefits of Westinghouse's 1979 benefit plan were designed to impact on nonfringe terms of employment in an intentionally discriminatory manner.[3] Accordingly, EEOC sought a remand for findings that provisions of Westinghouse's 1979 plan concerning severance pay were intended to affect adversely the nonfringe benefits of older employees so as to constitute a subterfuge on the part of Westinghouse to evade ADEA.

We granted panel rehearing, see E.E.O.C. v. Westinghouse Electric, Nos. 86–1226 and 87–5174, Order (3d Cir. September 20, 1990) (unpublished), and, on October 9, 1990, the present panel heard oral argument that focused on EEOC's petition and request for remand.

## I.

The facts of this case are fully set forth in our initial 1989 panel opinion. *Westinghouse II*, 869 F.2d 696 (3d Cir.1989). In brief, the 1979 Westinghouse severance plan denied severance pay to laid-off employees who were eligible for retirement. We will not discuss the substantive provisions of Westinghouse's 1982 plan, which, together with the 1979 plan was originally at issue, inasmuch as EEOC, in its Petition for Rehearing, has explicitly limited our concerns to whether the 1979 plan was a subterfuge to evade the purposes of ADEA. *See supra* note 3 (citing EEOC Petition for Rehearing at 3 n. 2).

In *Westinghouse II*, we had held that both the 1979 and the 1982 plans discriminated on the basis of age in violation of ADEA, § 4(a)(1), 29 U.S.C. § 623(a)(1). 869 F.2d at 699. We concluded that the district court had not erred in finding that under each plan, retirement-eligible employees were treated less favorably than younger employees, and that this less favorable treatment was based on age. *Id.* at 705–09. Moreover, we held that the district court correctly determined that the plans were not part of an integrated company plan to prevent "double-dipping." *Id.* at 707. Thus, Westinghouse had failed to set forth a legitimate, nondiscriminatory justification for the disparate treatment of retirement-eligible employees.

In addition, we held that the plans were not exempt under § 4(f)(2) of ADEA, 29 U.S.C. § 623(f)(2). 869 F.2d at 711. Section 4(f)(2) exempts, from the otherwise applicable requirements of § 4(a)(1), any bona fide employee benefit plan that is not a subterfuge to evade the purposes of ADEA so long as the plan does not require or permit involuntary retirement.[4] An employee benefit plan may qualify for exemption under § 4(f)(2), either if it itself satis-

---

**2.** Apparently EEOC recognized the impact of *Betts* because the Commission requested a stay of these proceedings pending action by Congress to reverse *Betts*. By order dated January 3, 1990, we denied the motion.

Since that order, Congress enacted legislation that rejected the *Betts* holding. *See* Older Workers Benefit Protection Act, Pub.L. No. 101–433, 104 Stat. 978 (October 16, 1990) (as amended by Pub.L. No. 101–521, 104 Stat. 2287 (November 5, 1990)). In doing so, however, Congress gave only prospective effect to the new Act. Pub.L. No. 101–433, § 105, 104 Stat. at 981. Accordingly, the Older Workers Benefit Protection Act does not affect this appeal, our analysis, or our decision.

**3.** In urging this narrow issue for remand, EEOC did not challenge Westinghouse's 1982 plan. *See* EEOC Petition for Rehearing, filed July 19, 1989 at 3 n. 2.

**4.** Section 4(f)(2) provides:

> It shall not be unlawful for an employer, employment agency, or labor organization—
> . . . .
> (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual; . . .

29 U.S.C. § 623(f)(2) (1982 & Supp. V 1987), *amended by* Older Workers Benefit Protection Act, Pub.L. No. 101–433, 104 Stat. 978 (October 16, 1990).

fies § 4(f)(2), or if it is part of an integrated benefit scheme that satisfies § 4(f)(2). We found that the plans could not qualify for the § 4(f)(2) exemption because they were not based on age-related cost factors. *Id.* (citing *E.E.O.C. v. City of Mt. Lebanon*, 842 F.2d 1480, 1491 n. 9 (3d Cir.1988), and *Westinghouse I*, 725 F.2d at 224). We decided, in addition, that the severance plans were not part of an integrated employee benefit scheme because, we concluded, severance pay is a fringe benefit for which early retirement benefits cannot be a substitute. *Id.* at 710 (citing *Westinghouse I*, 725 F.2d at 225). Finally, we remanded for the district court to reconsider those factors on which it relied in concluding that Westinghouse had acted willfully. *Id.* at 714.

In *Betts*, the Supreme Court addressed the question whether the § 4(f)(2) exemption applied to a disability retirement plan that was available only to employees who retired before reaching age sixty. The Court declined to decide the precise meaning of the phrase "any bona fide employee benefit plan, such as a retirement, pension, or insurance plan," found in § 4(f)(2). 109 S.Ct. at 2865 n. 6. The Court held, however, that the statutory language does not limit the exemption to "plans in which all age-based reductions in benefits are justified by age-related cost considerations." *Id.* at 2864–65 (rejecting *Westinghouse I*, 725 F.2d at 224). Moreover, the Court decided that the EEOC regulation, which provides that a plan is "not a subterfuge" only if lesser benefits are justified by age-related cost factors, 29 C.F.R. § 1625.10(d) (1988), was contrary to the plain language of the statute and invalid. 109 S.Ct. at 2863, 2865 (rejecting *Mt. Lebanon*, 842 F.2d at 1489).

The Court reached several conclusions regarding the precise meaning of "subterfuge" in § 4(f)(2). First, it reaffirmed its holding in *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 203, 98 S.Ct. 444, 450, 54 L.Ed.2d 402 (1977), that an employee plan adopted prior to the enactment of ADEA cannot be a subterfuge. 109 S.Ct. at 2861. The Court noted, however, that to the extent a post-ADEA provision of a plan

"increased the age-based disparity caused by the pre-Act age limitation, *McMann* does not insulate it from challenge." *Id.* at 2862.

Second, the Court reiterated its statement in *McMann* that " 'subterfuge' means 'a scheme, plan, stratagem, or artifice of evasion,' which, in the context of § 4(f)(2), connotes a specific 'intent . . . to evade a statutory requirement.' " *Id.* at 2863 (quoting *McMann*, 434 U.S. at 203, 98 S.Ct. at 450).

Third, the Court noted that a post-Act plan cannot be a subterfuge unless "it discriminates in a manner forbidden by the substantive provisions of the Act." *Id.* 109 S.Ct. at 2865–66. Noting that any benefit plan that discriminates against older workers would violate § 4(a)(1) (employers prohibited from discriminating on the basis of age with respect to compensation, terms, privileges of employment), the Court stated that both § 4(a)(1) and § 4(f)(2) could be given effect only if § 4(f)(2) is viewed as exempting bona fide benefit plans that are not "a method of discriminating in other, nonfringe-benefit aspects of the employment relationship." *Id.* at 2866 (citing 29 U.S.C. § 623(a)(1), (f)(2)). The Court did not define "nonfringe benefit" but its use of the term makes clear that the terms "bona fide employee benefit plan" and "nonfringe benefit" are mutually exclusive. *See id.* at 2864, 2866.

Fourth, the Court stated that § 4(f)(2) does not establish a defense to liability under ADEA; rather, the section "redefines the elements of plaintiff's prima facie case." *Id.* at 2868. Thus, an employee who challenges a provision of a benefit plan under ADEA "bears the burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discriminating in some nonfringe-benefit aspect of the employment relation." *Id.* at 2868.

## II.

The *Betts* Court held that an employee plan adopted prior to the enactment of ADEA cannot be a subterfuge to evade

the purposes of the Act. 109 S.Ct. at 2861 (citing *McMann,* 434 U.S. at 203, 98 S.Ct. at 450). As a threshold matter, we must determine whether this rule precludes a finding that the challenged provisions of the 1979 severance plan were a subterfuge to evade the purposes of ADEA.

ADEA was enacted on December 15, 1967 and became effective in June 1968. *See* Pub.L. No. 90–202, § 15, 81 Stat. 602, 607 (1967). Westinghouse adopted the severance pay plan that excluded retirement-eligible employees in 1960.

Westinghouse contends that the district court erred in its subterfuge analysis because it failed to identify any post-ADEA provision that increased the age-based disparity already present in the challenged plans. EEOC argues that post-ADEA changes in the pension plan expanded the group of retirement-eligible employees.[5] Thus, the group of employees ineligible for full participation in the severance plans has also expanded because the severance plans excluded or limited the participation of retirement-eligible employees. At issue is whether the post-ADEA expansion of the class of retirement-eligible workers "increased the age-based disparity caused by the pre-Act limitation" in the severance plans within the meaning of *Betts.* 109 S.Ct. at 2862. We believe that it does. The factual circumstances of *Betts* and the cases cited therein are instructive.

In *Betts,* the Supreme Court held that a pre-ADEA plan provision, which limited disability retirement benefits to those who retired before reaching age 60, was insulated from challenge as a subterfuge. *Id.* (citing *McMann,* 434 U.S. at 203, 98 S.Ct. at 450). The Court noted, however, that the plaintiff had not challenged the plan's age–60 rule, but rather, had challenged a post-ADEA amendment that guaranteed disabled retirees a minimum of 30% of their final average salary, but did not extend that automatic minimum to disabled employees who retire after age 60. *Id.* The Court held that to the extent the amendment increased the age-based disparity, "the automatic rule of *McMann* [was] inapplicable." *Id.* The amendment at issue in *Betts* qualitatively improved the benefits available to those eligible for disability retirement, that is, those retiring before age 60. Thus, the change clearly increased the age-based disparity in available benefits.

In *E.E.O.C. v. Home Insurance Co.,* 672 F.2d 252, 253 (2d Cir.1982), cited in *Betts,* the EEOC challenged a post-ADEA modification that lowered the mandatory retirement age in the company's pension plan from 65 to 62. The Second Circuit concluded that the existence of a pre-Act plan which arguably complied with ADEA could not "validate the post-Act modification to introduce new age-discriminatory terms." *Id.* at 259 n. 9. The *Betts* Court also cited *E.E.O.C. v. County of Orange,* 837 F.2d 420 (9th Cir.1988), in which the EEOC challenged a pre-ADEA pension plan, rather than its post-ADEA amendments. Participation in the plan was limited to public safety employees who were under age 36 when hired. *Id.* at 421. The Ninth Circuit held that post-ADEA amendments, which added juvenile hall counselors to the list of eligible employees and exempted certain law enforcement personnel from the age requirement, did not convert the pre-ADEA plan into a subterfuge. *Id.* at 423 & n. 3. According to the court, post-ADEA modifications may convert a benefit plan into a subterfuge only if they are "significant or at least relevant to the challenged discriminatory practice." *Id.* at 423; *see also E.E.O.C. v. Cargill, Inc.,* 855 F.2d 682, 686 n. 4 (10th Cir.1988) (although plan has been amended since 1967, EEOC does not claim that amendments relate to challenged provisions; amendments do not convert plan into subterfuge).

EEOC contends here, however, that post-ADEA changes in the pension plan, under

---

**5.** For example, the 1961 Pension Plan permitted employees to take early retirement after reaching age 60 with 10 years of service. Appendix ("App.") 1792. Under the 1973 Pension Plan, employees between the ages of 55 and 60 with 10 years of service were entitled to early retire-

ment in the case of location closedowns. App. 1704. By 1979, early retirement was available to employees between the ages of 50 and 60 with 25 years of service when the layoff resulted from job movement or product line relocation. App. 1599.

which employees became eligible for retirement at a younger age in certain circumstances, increased the age-based disparity caused by Westinghouse's severance plans.[6] One effect of the changes has been to expand the class of older employees who are ineligible for full participation in the severance plans. We believe that not all modifications which alter the pool of eligible employees will convert a pre-ADEA plan into a subterfuge. A plan provision that changes the pool on a basis unrelated to age is unlikely to increase the age-based disparity caused by the pre-ADEA plan. *See, e.g., County of Orange*, 837 F.2d at 423 & n. 3 (amendment adding juvenile hall counselors to list of eligible employees does not convert pre-ADEA plan into subterfuge). In this case, however, the post-ADEA changes in the class of eligible employees are clearly age-based. This is so, not because the actual number of older employees excluded from full participation in the severance plans has increased, but rather because the modifications have progressively lowered the age at which older employees become ineligible for full participation in the severance plans. We believe that these progressive age-related changes in the pension plan have increased the age-based disparity caused by the severance plans within the meaning of *Betts*. *See Robinson v. County of Fresno*, 882 F.2d 444, 445 (9th Cir.1989) (post-ADEA, age-related change in pre-ADEA retirement plan not insulated from ADEA challenge); *Home Insurance Co.*, 672 F.2d at 259 & n. 9 (post-ADEA amendments lowered mandatory retirement age from 65 to 62; pre-ADEA plan cannot validate this modification to introduce new age-discriminatory terms).

We do not find it significant in this case that the modifications did not alter the terms of the severance plans directly. The definition of retirement eligibility contained in the pension plan determines whether an employee qualifies for participation in the severance plan. Thus, modifications to the definition directly affect the availability of severance pay. Under the circumstances, therefore, we conclude that the post-ADEA modifications to the pension plan increased the age-based disparity in the severance plans and that the plans may be challenged as a subterfuge to evade ADEA.

### III.

■ Even though we believe the Westinghouse plans may be challenged, we find that under the standards announced in *Betts*, the plans qualify for the § 4(f)(2) exemption for "any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of [ADEA]." 29 U.S.C. § 623(f)(2). It is not disputed that Westinghouse observed the terms of the plans and that the plans are "bona fide" in that they exist and pay benefits. *See Betts*, 109 S.Ct. at 2860.[7]

While the Supreme Court declined to define the precise meaning of "bona fide employee benefit plan such as a retirement, pension, or insurance plan," *id.* at 2865 n. 6, it stated that the inclusion of the terms "retirement, pension, or insurance" suggests an enumeration rather than an exclusive listing of plans that qualify for the exemption. *Id.* at 2864. The Court rejected the "age-related cost factor" test, upon which we relied in *Westinghouse II* to identify exempt plans, reasoning that the costs of many plans that fall within the listed categories do not increase with the age of the employee, citing defined contribution pension plans as an example. *Id.* The Court noted that a Department of Labor regulation, defining an employee benefit plan as one "which provides employees

---

**6.** While the present challenge mounted by EEOC is directed only at Westinghouse's 1979 plan, it should not go unmentioned that EEOC had earlier objected to a severance plan provision as it was amended in 1982. We note, however, that the 1982 modification to the severance plan, a modification that is no longer in issue and that permitted older employees to choose between severance pay and retirement benefits, decreased rather than increased, the age-based disparity present in Westinghouse's original plan.

**7.** We note that EEOC has not argued here against a designation of the severance plans as "bona fide employee benefit plans."

with what are frequently referred to as 'fringe benefits,'" was broad enough to encompass a variety of fringe benefits, regardless whether the cost of those benefits increased with age. *Id.* (quoting 29 C.F.R. § 1625.10(b) (1988)). Moreover, the Court stated that "Congress left the employee benefit battle for another day, and legislated only as to hiring and firing, wages and salaries, and other nonfringe-benefit terms and conditions of employment." *Id.* at 2866.

Unlike wages and salaries, which are contingent on job performance, severance pay is linked to an employee's length of service and the occurrence of a layoff. Companies establish severance plans to provide short-term financial assistance during the transition period following layoff. Severance plans are available as a benefit to employees who remain with the company for a specified period. *See Westinghouse II*, 869 F.2d at 707. In light of the broad definition of "bona fide employee benefit plan" endorsed by the Court in *Betts*, we must conclude that the plans are "bona fide employee benefit plans" and thus may qualify for the § 4(f)(2) exemption so long as they are not intended as a subterfuge to avoid the purposes of ADEA.

■ In rejecting a cost-justification requirement, 109 S.Ct. at 2863–64, the Supreme Court held that an employee who challenges a plan provision as a subterfuge has the burden of proving that the provision "actually was intended to serve the purpose of discriminating in some nonfringe-benefit aspect of the employment relation." *Id.* at 2868. In the original district court action, EEOC contended that the severance plans discriminated against older workers with respect to recall rights, a

nonfringe benefit,[8] and required older workers to retire involuntarily.[9] Westinghouse argued that the district court ruled against EEOC on recall rights and involuntary retirement and that further consideration of those claims is now barred because EEOC failed to appeal or cross-appeal from the judgment.

In its Second Amended Complaint, EEOC claimed that Westinghouse violated ADEA by, among other things, "forcing laid off employees to retire prior to age 70 because [severance pay] was not available," and "denying recall to work to employees who were laid off and forced to retire." App. 39. The district court found that EEOC's claims implicated eight Westinghouse employment plans and practices. 632 F.Supp. at 351.[10] The district court "uph[e]ld the Westinghouse practices, other than denial of severance pay," *id.* at 350, and entered judgment "in favor of plaintiff and against defendant on the [severance plan] issues and in favor of defendant and against plaintiff on the other claims...." *Id.* at 373.

For the purpose of determining whether EEOC was obliged to appeal or cross-appeal, we are satisfied that the recall rights and involuntary retirement claims, as set out in the complaint, are based on the allegedly discriminatory application of the severance plans. Thus, to the extent that the district court ruled in favor of EEOC on the severance plan issues, it can hardly be said that the judgment constituted a ruling *against* EEOC on those claims. By enjoining Westinghouse from denying severance pay to retirement-eligible workers, *see id.*, the district court effectively eliminated the basis upon which recall rights allegedly

---

**8.** Under the *Betts* standard, we are satisfied that the right to recall is a nonfringe benefit.

**9.** *See infra* § VII (discussing involuntary retirement).

**10.** As viewed by the district court, the eight challenged practices were:
(1) pre-July, 1982, arrangements for pensions and layoff income benefits, (2) post-July, 1982, arrangements for pensions and layoff income benefits, (3) arrangements for management employees, (4) Advanced Retire-

ment Plan I, (5) Advanced Retirement Plan II, (6) an "impact number" process of awarding special benefits to certain employees laid off as a result of location shutdowns, product line relocations, or job movements, (7) limitation of retirement benefits to those actually eligible at time of layoff, and (8) limitation of death prior to retirement benefits to spouses of employees actually eligible for the benefits at the time of death.
632 F.Supp. at 351.

were denied and older workers allegedly were forced to retire.

Similarly, in ruling "against plaintiff on the other claims," we think the district court was merely reiterating its decision to uphold the other challenged Westinghouse practices. Therefore, we do not believe that EEOC should now be penalized for failing to appeal a judgment, which in relevant part, favored it.[11]

### IV.

Prior to 1982, retirement-eligible employees were excluded from participation in the severance plan. They could maintain recall rights only by foregoing all income during layoff. Westinghouse stresses that all laid-off employees did have recall rights, however, and that only those who terminated their layoff status—by choosing to receive pension pay or immediate lump sum severance pay—lost their right to be recalled to work.[12] Thus, even a younger laid-off employee could lose recall rights by choosing immediate lump sum severance. Hence, according to Westinghouse, its severance plans did not discriminate against older employees with respect to recall rights.

We recognize that the options available to older employees were less desirable than the options available to younger employees, who could maintain recall rights without sacrificing present income or vested retirement benefits. However, the severance plans cannot constitute a subterfuge for purposes of § 4(f)(2), post-*Betts*, unless Westinghouse intended the plans to discriminate against older workers with respect to a nonfringe benefit and the plans had that effect even if the path to that effect is an indirect one.[13] It is this principle on which EEOC has focused its contention that we should remand this case for a determination as to whether Westinghouse intended its severance plans to impact adversely on the recall rights of older workers.

### V.

In view of the foregoing, we agree with EEOC that, under *Betts*, a violation of the ADEA may be triggered if a fringe benefit was designed to impact on nonfringe terms of employment in an intentionally discriminatory manner, and if that design actually had such an effect. *See supra* note 13. Indeed, if the trial of the 1979 Westinghouse plan were to occur today, with EEOC claiming that Westinghouse had intentionally discriminated

---

**11.** EEOC contends that "[f]oreclosing the Commission from advancing these arguments in its favor would create a serious issue as to whether *Betts* should be applied retroactively to Westinghouse's plans under the three-part test developed in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07 [92 S.Ct. 349, 355–56, 30 L.Ed.2d 296] (1971)." We agree that EEOC is entitled to argue its case in light of the standards announced in *Betts* and we have considered each of EEOC's arguments in turn. As we discuss in text, however, EEOC is not entitled to attempt to prove that Westinghouse engaged in a subterfuge with respect to recall rights when it had earlier, and has throughout this case, unequivocally conceded that Westinghouse's plans did not constitute a subterfuge. *See infra* § V.

**12.** Under the Westinghouse plans, laid-off employees who were eligible to receive severance pay could choose from among three options: 1) lump sum payment, elected within sixty days of layoff; 2) weekly severance payments; and 3) lump sum payment after twelve months. Employees who chose the first option terminated their relationship with Westinghouse and gave

up the right to be recalled. App. 1805–06; 1278–79.

**13.** *See Betts,* 109 S.Ct. at 2865–66 ("a post-Act plan cannot be a subterfuge ... unless it discriminates in a manner forbidden by the substantive provisions of the Act."); 109 S.Ct. at 2868 ("the employee bears the burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discrimination in some nonfringe-benefit aspect of the employment relation.").

This principle, stated in text, would include, of course, the intentional use of a fringe benefit as an economic "disincentive" to continued employment for older workers. Moreover, provided that such "disincentive" was actually a subterfuge, it would not be a defense for the employer to assert, as did Westinghouse, that older employees "voluntarily" chose their own fate. We think it disingenuous to assert that a fringe-benefit plan cannot be a subterfuge under *Betts* simply because the employee must take an affirmative and "voluntary" action—e.g., electing to retire—to effectuate the employer's discriminatory intent regarding the nonfringe benefit.

against older workers through the use of a fringe-benefit plan that operated to disadvantage the nonfringe benefits of older employees, EEOC would undoubtedly be entitled to introduce evidence of Westinghouse's intent and design to effect that discrimination. *Cf. Robinson v. County of Fresno,* 882 F.2d 444 (9th Cir.1989). It could do so, however, not just as a result of *Betts'* instruction, but because a fundamental objective of ADEA since its inception has at all times been to proscribe intentional discrimination and subterfuge. *See* Pub.L. No. 90–202, 81 Stat. 602 (1967).

EEOC, in its post-*Betts* brief, claimed that the lack of "cost justification" constituted its main argument in this case.[14] It maintains that position even though neither the Revised Joint Pretrial Order, *see* App. 55 et seq., nor the district court opinion, 632 F.Supp. 343, addressed the "cost justification" theory as an issue to be tried.[15] We have great difficulty in accepting this assertion in light of the Pretrial Order which recited EEOC's legal issues as:

*Theories of discrimination.*

Plaintiff will established [sic] the violation on this issue by use of the collateral estoppel doctrine, direct evidence of age discrimination, the disparate treatment theory, and/or the disparate impact theory.

App. 67.

We have even greater difficulty in understanding that the lack of "cost justification" was EEOC's main argument in the case, because the district court's opinion reveals no discussion whatsoever of that issue, and indeed, does not couch its holdings in terms of "cost justification," but rather in terms of discrimination. 632 F.Supp. at 350, 364–67. Nevertheless, since EEOC now, post-trial, claims that its primary theory on which it tried the case against Westinghouse was that Westinghouse's plans lacked "cost justification," we will consider that claim in our discussion of whether a remand is appropriate. We note, at the outset, that we do not reach a different result even taking into account EEOC's present assertion that it went to trial primarily on a "cost justification" theory.

The propriety of remand in a situation such as this must, in the end, be governed by the specific facts and circumstances of the case. Concerns for the management efficiency of district courts counsel that the district court be given the discretion to permit, perhaps even compel, a plaintiff to forego prosecuting initially every remote and complex possible ground for relief when one or more easily litigated and fully dispositive grounds exist. If, hypothetically, the district court in the instant case had sought to promote efficiency by limiting EEOC's proofs and permitting EEOC to pursue only one of its claims that Westinghouse's plans were discriminatory, i.e., under either a disparate treatment or disparate impact theory, we presumably would not now punish EEOC by denying a remand so that it could pursue the theory that the court had excluded.

On the other hand, if EEOC's failure to pursue all available grounds for relief was not the product of a deliberate choice, made in concert with, and by permission of, the district court, in order to promote judicial economy, a remand would be inappropriate. For example, if EEOC simply chose for tactical reasons, of its own accord, not to pursue grounds for relief that it had alleged or that the court considered in issue, we cannot remand. And, certainly, if the EEOC affirmatively waived its opportunity to prove any theory of intentional discrimination and subterfuge, it may not have a second bite at that apple now.

■ The propriety of remand turns then on the specific circumstances surrounding EEOC's initial decision to forego proof of

---

14. *See* Supplemental Brief of Appellee, EEOC, filed November 17, 1989 at 18 ("[T]he EEOC justifiably presented as its main argument in this case that Westinghouse's layoff plans were not shielded by § 4(f)(2) because they were not cost-based.").

15. A very few paragraphs in our opinion in *Westinghouse II,* 869 F.2d at 710, discuss "cost justification," concluding that Westinghouse's severance plans were not exempt under § 4(f)(2), 29 U.S.C. § 623(f)(2).

intentional discrimination and subterfuge. We turn to an examination of the record on this issue.

In its First Amended Complaint, EEOC charged that since at least June 1, 1980, and continuously thereafter, Westinghouse, at its Pennsylvania facilities, willfully maintained unlawful employment policies and practices in violation of § 4(a) of ADEA including "denying recall to work to employees who were laid off and forced to retire ..." App. 26. This same language also appears in EEOC's Second Amended Complaint, which goes on to state that:

> The effect of the policies and practices complained of in paragraph 7 above has been to unlawfully deny to its employees back pay, LIB, fringe benefits, seniority rights, *recall rights* and otherwise adversely affect their terms, conditions, privileges of employment, or status as employees, because of such employees' ages.

App. 39–40 (emphasis added).

The Revised Joint Pretrial Order also included EEOC's statement that, among other things, EEOC would rely on recall testimony to prove that Westinghouse's "policy and/or practice in effect since July 1979" violated ADEA. App. 55 et seq. The same order contains as a statement of facts provided by Westinghouse, "[t]he Westinghouse LIB [Layoff Income Benefit] Program was neither adopted nor amended for the purpose of evading the purposes of the ADEA." App. 79.

Moreover, after listing all of its collective bargaining agreements with the various unions representing Westinghouse employees, and pursuant to which Westinghouse plans were negotiated, *see, e.g.,* App. 72–75, Westinghouse stated that "[p]ursuant to its collective bargaining agreement with various unions, Westinghouse maintains and acts in observance of the terms of a bona fide seniority system." App. 82. Westinghouse further included as its legal issue number 5, "whether the Westinghouse Layoff Income and Benefit Plans are bona fide employee benefit plans and not subterfuges to avoid the purposes of the ADEA

within the meaning of 29 U.S.C. § 623(f)(2)." App. 84.[16]

The Revised Joint Pretrial Order also identified as Westinghouse's issue number 10 the question whether EEOC could satisfy its burden of persuasion that Westinghouse intentionally discriminated against the employees on whose behalf EEOC now sues. App. 86–87. The specifics of issue number 10 in that order are revealing in light of the present question before us as to whether EEOC can now seek to re-litigate issues originally required to be proved and on which Westinghouse and EEOC went to trial. Issue number 10 reads:

> Whether the EEOC can meet its burden of persuasion, by a preponderance of the credible evidence, that Westinghouse intentionally discriminated against the employees on whose behalf the EEOC sues on account of their ages; more specifically, whether the EEOC can prove:
>
> (a) that age was a determining factor in the denial of benefits to the employees on whose behalf the EEOC sues;
>
> (b) that the alleged discriminatory conduct, if any, was committed purposefully or intentionally; and
>
> (c) that the reasons articulated by Westinghouse for its conduct were pretexts for age discrimination.

App. 86–87.

Not only were intent and subterfuge generally put in issue, but the Revised Joint Pretrial Order required that for each of Westinghouse's plans, EEOC had to prove intentional discrimination and subterfuge. App. 84–87. Indeed, as we have earlier observed, an examination of the district court opinion reveals that EEOC had sought to prove all of the issues framed by the Revised Joint Pretrial Order, including, but not limited to, disparate treatment and disparate impact. 632 F.Supp. at 350–51, 364–67. Although only the 1979 LIB plan is involved in this appeal, we make mention of the additional plans and the identical issues in connection with them, to emphasize that these issues of intent, discrimination, and subterfuge could not legitimately

16. *See also* App. 85–86.

or responsibly have been overlooked in the presentation of EEOC's proofs.

Indeed, we do not believe that these issues were overlooked in light of EEOC's theory of the case, because a significant aspect of this appeal, indicating that EEOC had not overlooked the issue of subterfuge, is that EEOC itself admitted that Westinghouse's plans did not constitute a subterfuge. Westinghouse had served interrogatories on EEOC, one of which sought EEOC's contention as to whether Westinghouse's plans constituted a subterfuge to evade ADEA. The interrogatory read as follows:

> Does plaintiff contend that either the Westinghouse Pension Plan and/or the Pension and Insurance Agreement between Westinghouse Electric Corporation and the International Union of Electrical, Radio and Machine Workers, as in effect during the time period relevant to the instant action, constitute a subterfuge to evade or avoid the purposes of the Age Discrimination in Employment Act? If so, (a) specifically identify the portion or portions of the Plan and/or Agreement which are involved, (b) set forth specifically and in detail each and every fact upon which plaintiff relies to support its claim; and (c) identify each and every document relied upon to support this claim, listing its title, date, author, and custodian.

App. 2192.

EEOC responded with this answer:

> Plaintiff does not contend that the subject Plans and Agreements constitute a subterfuge to evade or avoid the purposes of the Age Discrimination in Employment Act ("ADEA").

App. 2192.[17] Having conceded that Westinghouse's plans were not designed as a subterfuge to evade the purposes of ADEA, we know of no principle that would now permit EEOC to rescind or withdraw that concession or that would now permit EEOC to attempt once again to prove a fact (subterfuge) that it had conceded five years earlier did not exist.

As we will explain, *see infra* Part VI, EEOC exaggerates the extent to which *Betts* has changed the law, or at least, underestimates the extent to which it was presaged. At all events, it was five years ago that EEOC challenged the Westinghouse plans as being intentionally discriminatory, and went to trial with intentional discrimination (as well as subterfuge) identified as relevant issues in the case. App. 26, 39, 2192. EEOC at that time was expected to introduce, at that trial, all evidence available to it to prove that Westinghouse intended to discriminate against its older workers as to severance pay and recall rights. That *Betts* now furnishes a definition of subterfuge under § 4(f)(2) which includes a circumstance where fringe benefits may have a discriminatory impact on some nonfringe-benefit aspect of employment, does not alter the fact that any form or manner of discrimination, including use of a fringe-benefit plan to discriminate as to nonfringe aspects of an employment relationship, has, as noted above, always been prohibited by ADEA.[18] Hence, the evidence that EEOC seeks to introduce now on remand is the very evidence that EEOC would have been expected to introduce under its theory of the case in 1984.[19] EEOC was not required to await *Betts'* instruction as to intentional discrimination or subterfuge in order to prove, if it could, that

---

**17.** At oral argument, counsel for EEOC acknowledged that a showing of subterfuge requires a showing of intent.

> Question: Do you have to prove an intent to discriminate or do you have to prove a subterfuge; and is there a difference between the two? What do you have to prove after *Betts*?
>
> Answer: A subterfuge after *Betts* is ... using a fringe benefit plan with the intent to discriminate in a nonfringe-benefit aspect of the employment relation.

Tape of Oral Argument, October 9, 1990.

**18.** As we discuss, in § VI, *infra, Betts* made no significant change in the law or in the requisite proofs of intent respecting discrimination or subterfuge.

**19.** The dissent, in once again advocating a remand, ignores the substance of our review and analysis of the pleadings and Revised Joint Pretrial Order that controlled the trial. *See supra* § V.

Westinghouse intended to discriminate against older workers.

■ Yet, it is this evidence of "fringe/nonfringe intent" that EEOC seeks to develop on remand after 10 years of litigation in its effort to prove that Westinghouse intentionally used its 1979 severance plan to affect adversely the recall rights of its older workers. However, a remand for additional development of the record should be afforded only under those circumstances where the district court failed to make requisite findings, relied on an incorrect legal standard, improperly excluded evidence, or in other rare circumstances, none of which have been presented in the instant appeal. *See, e.g., E.E.O.C. v. Westinghouse Electric*, 869 F.2d at 715–16 (Garth, J., dissenting) (collecting cases).

■ A remand should not be ordered when "two bites of the apple" would be given to a litigant who, under circumstances such as those at bar, has neglected to produce evidence to support a desired finding and has, therefore, failed to carry its requisite burden as to a particular issue. *Id.* The "twice bitten" apple principle has not only found expression in a dissent, focused on willfulness and filed in an earlier opinion in this same case, *id.*, but it also has found expression in other contexts.[20]

Here, as we point out, EEOC had full opportunity to produce evidence at trial to support its claim of subterfuge and discriminatory intent. Indeed, these very issues were delineated in the Revised Joint Pretrial Order stemming from EEOC's 1984 complaint. App. 55 et seq. That order clearly reveals that intentional discrimination and subterfuge were considered by EEOC and Westinghouse as fundamental issues in the case—issues that EEOC was obliged to prove by whatever means and by whatever evidence it could muster. The fact that EEOC did not choose to introduce evidence of intentional discriminatory conduct when that evidence was ostensibly available to it, and that it conceded that the plans did not constitute a subterfuge, *see supra* pp. 629–30, cannot excuse this omission.

In sum, EEOC is in no position at this stage of these lengthy proceedings to return to the trial court in order to litigate the self-same matters that it could and should have litigated initially.

## VI.

■ EEOC argues, however, that a remand for additional proofs should be permitted when, subsequent to the trial of a proceeding, new authority has appeared. We examine this argument in light of EEOC's proposition that "a drastic change in the law ... should ... enable [parties] to raise or reopen issues upon remand." EEOC Petition for Rehearing at 14. *Betts*, claims EEOC, effected such a "drastic change." EEOC contends that the established principle of litigating those matters which it should have, or could have, litigat-

---

20. *See, e.g., Northwestern Indiana Telephone v. FCC*, 872 F.2d 465, 471 (D.C.Cir.1989) (no second opportunity afforded to comply with administrative exhaustion requirements because "[t]he efficiency and fairness values served by exhaustion principles would be seriously compromised if agencies were obliged to furnish such second bites at the apple."), *cert. denied,* —— U.S. ——, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990); *Phillips v. Lane*, 787 F.2d 208, 215 (7th Cir.) (as to a waiver of argument in habeas corpus proceeding, petitioner "is not entitled to endless bites at the same apple or to a windfall second chance because of the district judge's error on another issue"), *cert. denied,* 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986). *See also Pittsburgh Press Club v. United States,* 579 F.2d 751, 763 (3d Cir.1978) (remanding but precluding reopening record for additional evidence because "having had two bites from the apple ... [the plaintiff] must therefore rest on the evidence adduced in the [prior trials] ..."); *Szubak v. Secretary of Health and Human Services,* 745 F.2d 831, 834 (3d Cir.1984) (claimants should be afforded only one fair opportunity to demonstrate eligibility for benefits under any one set of circumstances because otherwise "[a] claimant might be tempted to withhold medical reports, or refrain from introducing all relevant evidence, with the idea of 'obtaining another bite of the apple' if the Secretary decides that the claimant is not disabled."); *Baroid Division v. Occupational Safety and Health Review Comm'n,* 660 F.2d 439, 448 (10th Cir.1981) (remand may not provide an opportunity for the Secretary to get a second bite at the apple by attempting to show a feasible method of abatement that he did not attempt to show at the first hearing).

ed at trial is not applicable here where an intervening authority, i.e., *Betts*, has altered the legal landscape. We are not persuaded by this argument.

First, as Westinghouse points out, discrimination in recall rights has always been deemed to violate ADEA, and EEOC's Second Amended Complaint, filed as early as October 1984—the very complaint on which the parties went to trial—alleged recall rights discrimination by Westinghouse as a violation of ADEA. Moreover, as we read *Betts*, the Court does no more than confirm that any subterfuge or intentional discrimination, including the discrimination charged by EEOC whereby an employer's plan to utilize a fringe benefit to discriminate against older workers as to the nonfringe-benefit aspects of the worker's employment, will violate the ADEA. As we noted earlier, this principle of intentional discrimination and subterfuge, no matter the form that it may take, has always been proscribed by ADEA. Thus, we do not recognize that *Betts* introduced any new concept in the proof of, or enforcement of, ADEA violations.

While *Betts* did eliminate "cost justification" as a basis for employers to show that their fringe-benefit plans were not subterfuges within § 4(f)(2), it did not alter the basic underlying issues involved in subterfuge analysis. In *Westinghouse I*, 725 F.2d 211, *see supra* note 1, we noted the relevance of Westinghouse's intent or motive to a claim by EEOC of subterfuge. Even while approving EEOC's cost justification theory as a basis for holding that the LIB plan did not fall within the § 4(f)(2) exemption, 725 F.2d at 225, we specifically observed that the subterfuge issue with respect to Westinghouse's earlier 1976 LIB plan was "a disputed issue of material fact" because "[t]he record [was] silent as to Westinghouse's purpose or motive" in adopting the plan. 725 F.2d at 224 n. 9.

Second, *Westinghouse I* was decided on December 29, 1983, and was amended on January 20, 1984. 725 F.2d at 211. Trial before the District Court for the Eastern District of Pennsylvania on the issues that we review here did not start until September 6, 1985. App. 7. In light of the issues prescribed in the Revised Joint Pretrial Order and in light of our *Westinghouse I* opinion that had to have put EEOC on notice that the issue of subterfuge constituted a disputed issue of material fact requiring proofs of Westinghouse's purpose or motive, EEOC cannot be heard at this juncture to claim that *Betts* drastically changed the law regarding subterfuge and intent.

Third, even though *Westinghouse I* accepted the cost justification theory, we are not persuaded that the *Betts* rejection of cost justification—the theory upon which EEOC claims to have pinned its case—was not presaged by at least one other court which had cast substantial doubt on the merits of "cost justification" even earlier than the filing of EEOC's complaint.[21] Thereafter, and during the course of the litigation of this case, but before *Betts*, other courts had taken the same direction.[22]

In a case discussing an analogous concept of discrimination, but in a voting context, the Fourth Circuit refused to order a remand for further evidence when, after the district court had decided against the plaintiffs on the merits and held that the at-large system of voting did not violate the fourteenth or fifteenth amendments, the Supreme Court decided *City of Mobile v. Bolden*, 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980), which purportedly undercut the district court's holding. *Washington v. Finley*, 664 F.2d 913, 925–26 (4th Cir.1981), *cert. denied*, 457 U.S. 1120, 102 S.Ct. 2933, 73 L.Ed.2d 1333 (1982). Judge Phillips, writing for the *Washington* court, addressed the issue of remand, stating that:

> assuming from th[e] division within the *Mobile* Court that there was sufficient

---

21. *See, e.g., Crosland v. Charlotte Eye, Ear and Throat Hosp.*, 686 F.2d 208, 213 (4th Cir.1982).

22. *See, e.g., E.E.O.C. v. Cargill, Inc.*, 855 F.2d 682, 686 (10th Cir.1988); *E.E.O.C. v. Orange County*, 837 F.2d 420, 422–23 (9th Cir.1988); *E.E.O.C. v. Maine*, 644 F.Supp. 223, 226–27 (D.Me.1986), *aff'd*, 823 F.2d 542 (1st Cir.1987).

uncertainty on the point to warrant our practical inquiry into the fairness of holding plaintiffs to the deficiencies of proof now revealed, we nevertheless think that remand here is not warranted. Plaintiffs presumably adduced all the evidence available to them at the time to prove a disproportionate impact under the *Zimmer* criteria. Certainly they must be held to have had a full and fair opportunity to do so, since obviously they knew that such an impact or effect must be established as an essential element of these claims. They must also be held to have understood that this proof could only have inferential force in establishing purpose, and that if other inferential or direct proof of purpose were available, it too would be highly relevant and perhaps needed to buttress the inference based upon effect alone. While *Mobile* may *have made more explicit the absolute need for other, independent evidence of purpose, we cannot say that the need, or certainly the helpfulness, of such evidence could not have been reasonably apparent to ordinarily prudent counsel in litigating these claims.* This, we think, is determinative against the suggestion that fairness requires remand in light of *Mobile.*

*Id.* at 925–26 (emphasis added).

So too, here, we do not regard *Betts* as having made such a change in the law proscribing intentional discrimination and subterfuge that EEOC should have a second opportunity on remand to prove the intentional discrimination it should have, or could have, proved initially. Just as the Fourth Circuit held in *Washington,* we cannot say that in this case the need for such evidence could not have been reasonably apparent to a prudent, resourceful, and experienced litigant such as the EEOC.

### VII.

■ One more issue remains for our determination. EEOC has contended that

Westinghouse's 1979 plan effectively compelled involuntary retirement of older employees, in violation of § 4(f)(2). While the Petition for Panel Rehearing that we granted is centered wholly upon EEOC's request for a remand to prove discriminatory intent, we cannot overlook an issue previously urged upon us, but that was not a subject of the Petition for Rehearing.

Section 4(f)(2) provides that an employee-benefit plan that is not a subterfuge to evade ADEA is exempt, except that "no such seniority system or employee-benefit plan shall require or permit the involuntary retirement of any individual ... because of the age of such individual." 29 U.S.C. § 623(f)(2). Congress added this prohibition to § 4(f)(2) in 1978, Pub.L. No. 95–256, § 2, 92 Stat. 189, in response to a Bureau of Labor Statistics study which revealed that 41% of the workers covered by private pension plans were subject to mandatory retirement provisions. *See* S.Rep. No. 493, 95th Cong., 2d Sess. 9, *reprinted in* 1978 U.S.Code Cong. & Admin.News 504, 512. Congress concluded that raising the upper age limit under ADEA from 65 to 70 "would be an empty gesture if employees remained subject to mandatory retirement because of provisions contained in collective bargaining agreements or employee benefit plans." *Id.*

The Westinghouse plans do not contain mandatory retirement provisions. EEOC contends, however, that the options available under the plans left retirement-eligible employees with no real choice other than retirement, and that this amounted to constructive discharge. Westinghouse claims that the plans permitted older employees to choose between lawful options: i.e., under the 1979 plan, retirement or unpaid layoff with recall rights, and under the 1982 plan, retirement or severance pay with recall rights.[23] Thus, according to Westinghouse, the plans did not permit or require involuntary retirement.

---

**23.** Although the 1982 plan is not challenged in the Petition for Rehearing, the issue of involuntary retirement originally raised by EEOC was also raised in connection with the 1982 plan. Thus, although for the most part we have es- chewed discussions of the 1982 plan in this opinion, we deem it appropriate to put to rest the issue of involuntary retirement as it was raised with respect to both the 1979 and 1982 plans.

We do not believe that Congress intended § 4(f)(2) to reach circumstances like these where laid-off employees had the option to forego retirement and remain with the company on layoff while awaiting recall.[24] *Cf. Henn v. National Geographic Society*, 819 F.2d 824, 826 (7th Cir.) (existence of early retirement plan does not violate ADEA provided an employee on the job may decline offer and continue to work), *cert. denied*, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987). Rather, we think § 4(f)(2) proscribes the use of employee benefit plans as a means of forcing older workers off the job. *Cf. Bodnar v. Synpol, Inc.*, 843 F.2d 190, 193 (5th Cir.) (employer's offer of early retirement may create prima facie case of age discrimination if it sufficiently alters status quo that each choice facing employee makes him worse off than he was before offer), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). The choice between retirement and unpaid layoff with recall rights does not constitute involuntary retirement where, as here, the employee's layoff status was unrelated to age.[25] *Cf. Henn*, 819 F.2d at 829 (pressure to choose between retirement and continued employment does not make choice involuntary unless terms on which employee would remain on job constitute a violation of ADEA).

Nor do we believe that exclusion from the severance plan caused older employees to retire. Those who retired did so because they were laid off.[26] Moreover, after 1982, retirement-eligible employees could choose between retirement benefits and severance pay with recall. We believe that a plan which provides laid-off employees with such a choice cannot be said to require or permit involuntary retirement within the meaning of ADEA.[27]

EEOC suggests that Westinghouse misled older workers about their options and pressured them to choose retirement benefits over severance pay with recall. However, such conduct by Westinghouse, even if it had been proved by EEOC, does not demonstrate that the terms of the severance plans violated 29 U.S.C. § 623(f)(2) by requiring or permitting involuntary retirement. The short of it is that the test for "involuntary retirement" is extremely rigorous, and it is not met here.

## VIII.

On this record, EEOC has failed to establish that Westinghouse's 1979 plan has violated ADEA, and it has not challenged Westinghouse's 1982 plan in the instant Petition. Having concluded that EEOC is not entitled to a remand for yet another opportunity to prove that Westinghouse's 1979 plan was a subterfuge to evade the ADEA, we will reverse the judgment entered by the district court against Westinghouse and remand to the district court with the direction that the district court enter judgment in favor of Westinghouse on all EEOC claims. Each party will bear its own costs.

HIGGINBOTHAM, Chief Judge, concurring in part and dissenting in part.

I join in Parts I–IV and Part VII of the majority opinion. I must, however, respectfully dissent from the majority's holding that EEOC has waived the opportunity

---

**24.** According to Westinghouse, the choice between retirement and layoff was a viable one. Westinghouse points out that the charging party in this case, Charles Slackway, opted to remain on unpaid layoff with recall rights rather than retire. We express no opinion on this matter.

**25.** EEOC has not contended, in its amended complaint or in its briefs to this court, that the decision to lay off employees was related to age.

**26.** Our decision in *Coventry v. United States Steel Corp.*, 856 F.2d 514 (3d Cir.1988), cited by EEOC, is inapposite. In that case, an employee was required to sign a waiver of his rights

under ADEA in order to receive early retirement benefits. We noted that the employee was presented with "little more than a 'Hobson's choice;'" he could either sign the waiver to receive benefits or face unpaid layoff. *Id.* at 524. The issue was whether and under what circumstances an employee's decision to waive ADEA rights was voluntary, *id.* at 517, not whether exclusion from participation in a severance plan, which left laid-off employees with the choice of retirement or continued layoff, required or permitted involuntary retirement.

**27.** For the text of § 4(f)(2), 29 U.S.C. § 623(f)(2), see *supra* note 4.

to adduce further evidence regarding Westinghouse's motivations for adopting the 1979 LIB Plan in light of the new standards enunciated in *Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). Specifically, I take issue with the majority's assumption that, at the time of trial, EEOC had adequate notice of its responsibility to introduce all available evidence that the challenged plan was not a "subterfuge" to evade the purposes of the ADEA. Unlike my colleagues, I regard *Betts* as representing a substantial enough change in the law that we should not lightly deny EEOC the opportunity to adduce further evidence on the issue of whether or not the 1979 LIB plan was a subterfuge to discriminate against older workers with respect to their right to be recalled from layoff.

*Betts* represents a significant change in the law, not so much because it narrowed and refined the definition of subterfuge, but because it altered significantly the allocation of proof between the parties in an ADEA case. The Supreme Court held that § 4(f)(2) is not a defense to liability under the ADEA but rather "redefines the elements of plaintiff's prima facie case." *Betts*, 109 S.Ct. at 2868. Thus, an employee who challenges a provision of a benefit plan under the ADEA "bears the burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discriminating in some nonfringe-benefit aspect of the employment relation." *Id.*

The significance of the change is made evident when one contrasts the pre- and post-*Betts* landscape. In 1985, at the time this case went to trial, there was a three-part allocation of proof that provided the legal framework within which the district court considered the evidence adduced at trial. *See* C. Richey, *Manual on Employment Discrimination Law and Civil Rights Actions in the Federal Courts* (Federal Judicial Center, Jan. 1988 ed.) A review of the district court's opinion following trial provides a snapshot of the 1985 pre-*Betts* landscape. At that time the district court explained:

The standards for determining whether an employer has engaged in age-based employment discrimination are borrowed from Title VII jurisprudence, *see Massarsky v. General Motors Corp.*, 706 F.2d 111, 117 (3d Cir.1983), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). Plaintiffs may proceed under two theories. Under the disparate treatment theory of discrimination, plaintiffs must demonstrate *intentional* discrimination; that is, *that an employer expressly applies age-based standards in its treatment of employees. See id.* at 117. [emphasis added] Under the disparate impact theory of discrimination, plaintiffs must demonstrate that an employer's application of facially neutral criteria disproportionately and adversely affects older employees, and cannot be justified by business necessity.

*EEOC v. Westinghouse Electric Corp.*, 632 F.Supp. 343, 364–5 (E.D.Pa.1986), *aff'd. in part*, 869 F.2d 696 (3d Cir.1989), vacated and remanded for reconsideration in light of *Betts*, *Westinghouse Electric Corp. v. EEOC*, —— U.S. ——, 110 S.Ct. 37, 107 L.Ed.2d 7 (1989). Once EEOC met its initial burden of production by establishing a prima facie case of discrimination (establishing by a preponderance of the evidence that age was a determining factor in the employment decision) the burden of proof and production switched to the defendant. *See Massarsky v. General Motors Corp.*, 706 F.2d 111, 118 (3d Cir.1983), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). While the burden of persuasion remained with the plaintiff, the defendant was required to articulate a reasonable nondiscriminatory reason for its actions. The ADEA provides several statutory exceptions under which an employer may escape liability if the employer is able to demonstrate that its policy falls within one of the exceptions. *EEOC v. Westinghouse*, 632 F.Supp. at 365 (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). At the trial, Westinghouse chose to invoke the § 4(f)(2) "bona fide employee benefit plan" defense. *See EEOC v. Home Ins. Co.*, 672 F.2d 252 (2d Cir.1982); *EEOC v.*

*Eastern Airlines*, 645 F.2d 69 (5th Cir. 1981) (employer had the burden of proving that age-based actions fall within the § 4(f)(2) exception).

At that time, the allocation of proof under the ADEA would have allowed EEOC the opportunity to discredit the evidence supporting Westinghouse's § 4(f)(2) defense by showing that the reason offered was pretextual. "As under Title VII, a plaintiff may show pretext 'directly by persuading the court that a discriminatory reason more likely than not motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Manual on Employment Discrimination* at 21, (citations omitted).

It was never at any point, however, necessary for EEOC to rebut Westinghouse's defense that the plans were bona fide and not a subterfuge for the simple reason that Westinghouse did not make a sufficient showing to raise even an inference in its favor. The district court concluded that Westinghouse had not established the second and third elements of the defense.[1] As we now know, the district court's decision that the challenged plans were not a bona fide benefit plan was based on a rationale that was subsequently directly overruled by *Betts*. *EEOC v. Westinghouse*, 632 F.Supp. at 368. Regarding the third element, subterfuge, the district court rejected Westinghouse's argument that the plans could not be a subterfuge because they pre-existed the ADEA. The district court reasoned that *McMann* did not insulate post-Act modifications of benefit plans such as the ones at issue here. *Id.* Moreover, the district court concluded that "[p]ost-Act reaffirmation of prior discriminatory practices, such as defendant's, … amounts to evasion of the Act." *Id.*

Notwithstanding the burdens of proof regarding the § 4(f)(2) exception, the ultimate burden of persuasion was at all times

with the plaintiff. *Id.* Thus, an ADEA plaintiff was required to show either that age was a determinative factor in the employer's decision, *see Smithers v. Bailar*, 629 F.2d 892, 897–98 (3d Cir.1980), or that the employer's policy was discriminatory on its face. *Massarsky*, 706 F.2d at 119. After evaluating all of the evidence presented at trial, the district court found that EEOC had met its burden of establishing intentional discrimination because it ably demonstrated that Westinghouse expressly applied age-based standards in its treatment of employees.

I find that Westinghouse's denial of severance pay to employees who take retirement is age-based discrimination. [citation omitted] Defendant's programs give employees who are eligible for retirement no practical choice but to take retirement benefits and forego severance pay. Therefore, receipt of severance pay is conditioned upon non-retirement status, and laid off workers are treated differently on the basis of age. *EEOC v. Westinghouse*, 632 F.Supp. at 366.

Having now recreated the pre-*Betts* landscape, it is clear to me that the lack of evidence presented by the EEOC as to whether or not the plans were a subterfuge to evade the purposes of the ADEA can only have been expected. Within this context, as deduced from the district court opinion, it is also clear that the majority's assertion that "the evidence that EEOC seeks to introduce now on remand is the very evidence that EEOC would have been expected to introduce under its theory of the case in 1984" is an incorrect assessment of what occurred at trial. *See* Maj.Op. at 630. Contrary to the majority's analysis, in my view, the pleadings and the Revised Joint Pre–Trial order reveal only that EEOC had to prove intentional discrimination not subterfuge. Absent some credible showing on the part of Westinghouse that the challenged plans were a

---

1. In establishing a § 4(f)(2) defense, a company had to demonstrate the existence of three elements: (1) the company must have been observing the terms; (2) of a bona fide retirement plan; (3) which is not a subterfuge to evade the purposes of the ADEA. *EEOC v. Westinghouse Electric Corp.*, 725 F.2d 211, 223 (3d Cir.), *cert. denied* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38

(1984); *Smart v. Porter Paint Co.*, 630 F.2d 490, 493 (7th Cir.1980); *Gonsalves v. Caterpillar Tractor Co.*, 634 F.2d 1065, 1066 (7th Cir.1980), *cert. denied* 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981); *EEOC v. Baltimore & O.R. Co.*, 632 F.2d 1107, 1110 (4th Cir.1980), *cert. denied* 454 U.S. 825, 102 S.Ct. 113, 70 L.Ed.2d 98 (1981).

bona fide employee benefit plan and not a subterfuge to evade the purposes of the ADEA, EEOC was not obliged to show that Westinghouse employed "a scheme, plan, stratagem, or artifice" to evade the purposes of the ADEA by using a fringe benefit to affect a nonfringe-benefit. *See Betts* 109 S.Ct. at 2863 (quoting *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 203, 98 S.Ct. 444, 450, 54 L.Ed.2d 402 (1977)). To look back now, with 20/20 hindsight, and say that EEOC should have presented rebuttal evidence, regarding an issue that Westinghouse had not managed to make even a reasonably credible showing that it was truly an issue, is simply unfair.

The majority attaches great significance to EEOC's negative answer to a Westinghouse interrogatory which questioned whether EEOC contended that the pension plans constituted a subterfuge. *See* Maj.Op at 630. I, on the other hand, do not attach importance to an answer to a question taken out of the context of the law as it then existed. The majority has placed EEOC in a "Catch–22" position— EEOC is now foreclosed from offering proof of subterfuge because it did not offer the proof at a time when it was presented with an opportunity to do something that it was not legally required to do. In fact, in my view, Westinghouse's interrogatory is striking only as a demonstration of aggressive pre-trial strategy. Had EEOC responded affirmatively, the interrogatory then required EEOC to assume the burden of demonstrating subterfuge, a burden which it was not legally required to assume.

The result in this case will lead invariably to more and more, costly, and aggressive pre-trial litigation strategies where the adversaries will be required to spend thousands of hours on the interstitial spaces that are not relevant when asked and become relevant only when the law of the circuit is reversed.

Therefore, I disagree that EEOC waived its opportunity to produce evidence regarding subterfuge. Fairness to the parties dictates that the matter be remanded to the district court to give both sides an opportunity to put on evidence, in view of the new ADEA landscape under *Betts*, about the actual effect of the 1979 LIB plan on the workforce in the affected plants, and Westinghouse's motivations for adopting these plans.[2] It cannot be disputed that this litigation has consumed too many years and too many dollars. I recognize that the remand I suggest here would lengthen an already protracted case. But we must never forget that we are deciding matters of great economic importance to the individual victims who suffered an injury for which they are now never to be recompensed. It is my opinion that they should not suffer because judges change the rules of the game in the third quarter. Thus, I dissent.

---

**2.** The majority opinion acknowledges that Congress has recently amended the ADEA in light of *Betts.* Specifically, the Older Workers Benefit Protection Act, amended the ADEA to reimpose the burden on the employer to offer cost justifications for age-based employment decisions. Public Law 101–433 provides, in part:

The Congress finds that, as a result of the decision of the Supreme Court in Public Employees Retirement System of Ohio v. Betts,

492 U.S. 158, 109 S.Ct. 2584, 106 L.Ed.2d 134 (1989), legislative action is necessary to restore the original congressional intent in passing and amending the Age Discrimination in Employment Act of 1967 (29 U.S.C. 621 et seq), which was to prohibit discrimination against older workers in all employee benefits except when age-based reductions in employee benefit plans are justified by significant cost considerations.